**EASTERN MARINE, INC.**

v.

**The UNITED STATES.**

No. 105–84C.

United States Claims Court.

June 18, 1986.

As Revised July 7, 1986.

Joseph A. Artabane, Washington, D.C., for plaintiff.

Michael T. Paul, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. David Brochstein,

Office of Gen. Counsel, U.S. Coast Guard, of counsel.

## OPINION

MARGOLIS, Judge.

Pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (West Supp. 1986), the plaintiff, Eastern Marine, Inc. [EMI], seeks attorneys fees and costs incurred in bringing an action against the United States resulting in a judgment for $223,430. EMI alleges that it is a "prevailing party" as defined by the Act and that the position of the defendant United States was not substantially justified. It seeks an award of $100,169.05 in attorneys fees and $16,268.55 in costs.

The defendant asserts that EMI was not a prevailing party; that the government's position was substantially justified; that in the alternative, if fees are awarded, only attorneys fees relating to the theory on which EMI eventually prevailed should be recovered; and that EMI's recovery should be limited to the statutory rate of $75 per hour.

## FACTS

A full discussion of the dispute that gave rise to this claim for attorneys fees and costs is set forth in *Eastern Marine, Inc. v. United States*, 5 Cl.Ct. 34 (1984). In short, these are the facts:

Through the unauthorized encouragement of a Coast Guard officer, EMI was induced to participate in a procurement for high speed Coast Guard boats modeled after parent crafts that were proven to be fast, reliable, and seaworthy. That same officer assured EMI that certain variations it hoped to propose would not disqualify it from the bid competition. Relying on his assurances, EMI incurred substantial costs in preparing a bid.

Despite the Coast Guard officer's assurances to the contrary, EMI's proposal was eliminated from the competition because the craft EMI proposed differed substantially from the parent craft. Before being eliminated, however, the Coast Guard advised EMI of several technical deficiencies in its bid, and EMI spent additional monies correcting these deficiencies only to be told later that it was being eliminated from the competition.

EMI filed a protest with the Government Accounting Office [GAO] and subsequently filed a complaint in this court when the Coast Guard refused to stipulate that it would postpone award of the contract until GAO ruled on the protest. This court was asked to enjoin the Coast Guard from awarding the contract or, alternatively, to award EMI its bid preparation costs. The court denied both requests, finding that an injunction was inappropriate since there was a rational basis for the Coast Guard's action and that EMI should not have relied on the officer's verbal assurances.

On appeal, the U.S. Court of Appeals for the Federal Circuit [CAFC] affirmed this court's finding with respect to the injunction, but reversed the court's determination that bid preparation expenses should not be awarded. *Eastern Marine, Inc. v. United States*, No. 84–1444 (Fed.Cir. Jan. 31, 1985) (unpublished slip opinion, disposition only reported at 765 F.2d 158). The Court of Appeals found that the Coast Guard had acted in an arbitrary and capricious manner in failing to advise EMI earlier that its proposal was non-competitive and unacceptable. The CAFC stated:

> The record clearly demonstrates that EMI would not have been in the [patrol boat] competition if it had not been for the encouragement of [the Coast Guard officer] and should have been eliminated at an earlier stage if the contracting personnel had clearly informed it of the disqualifying condition relating to the two engine design. Since the [Coast Guard's] conduct was not honest and fair, it was arbitrary and capricious. The award of bid preparation costs is appropriate under the circumstances.

Slip op. at 5.

After the CAFC ruled that EMI was entitled to relief, the Government filed a Motion for Reconsideration which was denied on March 4, 1985. On March 26, 1985, the CAFC issued a one sentence order stat-

ing, "The court having considered the submissions of the parties, IT IS ORDERED THAT the parties shall bear their own costs in this appeal." *Eastern Marine, Inc. v. United States,* No. 84–1444, Order of March 26 (Fed.Cir.1985). The Government insists the March 26, 1985 order establishes that EMI was not a prevailing party and that this court is bound by the CAFC's determination as the law of the case.

EMI disagrees and also points out that during the course of litigation in the U.S. Claims Court, the Government's position was not substantially justified because the Government resisted discovery and interposed questionable defenses. For example, EMI asserts that the Government defended against the request for an injunction by asserting that immediate award of the contract was a matter of national security. However, the Coast Guard waited nearly five weeks after the injunction was denied to award the contract, and that award was later set aside as illegal because of significant variations between the parent craft and the craft proposed. *See Bollinger Machine Shop & Shipyard, Inc. v. United States,* 594 F.Supp. 903 (D.D.C.1984). EMI also alleges that a further example of the Government's lack of good faith in resolving EMI's claim is the Coast Guard's initial refusal to stipulate to postponement of the contract award.

## DISCUSSION

The Equal Access to Justice Act [EAJA] was first enacted in 1980 with a sunset date of October 1, 1984. The purpose of the Act was to ensure that certain individuals and small businesses would not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights. The Act expired as scheduled, but was retroactively revived, modified, re-enacted and made permanent by the passage of H.R. 2378 signed by the President on August 5, 1985. The standard for recovery under the Act is that a qualified "prevail-

ing party" can recover attorneys fees and costs unless the United States can show its position was "substantially justified."

██ EMI is a "prevailing party" as defined by the Act since it is a small business and was successful in obtaining at least one significant form of requested relief, *i.e.,* its bid preparation costs. *See Environmental Defense Fund, Inc. v. Watt,* 554 F.Supp. 36, 39 (E.D.N.Y.1982), *aff'd,* 722 F.2d 1081 (2d Cir.1983). The Government's contention that the law of the case precludes a finding that EMI was a "prevailing party" is without merit. The CAFC's one sentence order of March 26, 1985 that each party bear its own costs does not necessarily imply that EMI did not prevail. Moreover, the costs at issue in the CAFC were appeal costs, not attorneys fees and costs in this court.

Having found that EMI is a prevailing party, the next relevant inquiry is whether or not the Government has met its burden of proving that its position was "substantially justified." To this end, a brief discussion of the legislative history of the Act is necessary.

Subsequent to the passage of the EAJA, the House Committee on the Judiciary conducted oversight hearings on its implementation. The Congress eventually passed H.R. 2378, an amended version of the Act, to overcome certain Presidential objections to earlier versions and to remedy ambiguities and inconsistent holdings in the courts. One such ambiguity was the meaning of the term "substantially justified"; another was whether or not the underlying agency action was part of the determination of whether the Government's position was substantially justified. The House Report stated:

Part of the problem in implementing the Act has been that agencies and courts are misconstruing the Act. Some courts have construed the "position of the United States" which must be "substantially justified" in a narrow fashion which has helped the Federal Government escape liability for awards. H.R. 2378 clarifies both of these points.

When the escape clause was originally written, it was understood that "position of the United States" was not limited to the government's litigation position but included the action—including agency action—which led to the litigation. However, courts have been divided on the meaning of "position of the United States." H.R. 2378 clarifies that the broader meaning applies.

Another problem which has developed in the implementation of the Act has been the fact that courts have been divided on the meaning of "substantial justification." Several courts have held correctly that "substantial justification" means more than merely reasonable. Because in 1980 Congress rejected a standard of "reasonably justified" in favor of "substantially justified," the test must be more than mere reasonableness.

Especially puzzling, however, have been the statements by some courts that an administrative decision may be substantially justified under the Act even if it must be reversed because it was arbitrary and capricious or was not supported by substantial evidence. Agency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act. Only the most extraordinary special circumstances could permit such an action to be found to be substantially justified under the Act.

H.R.Rep. No. 120, 99th Cong., 1st Sess. 9–10, *reprinted in* 1985 U.S. Code Cong. & Ad. News 132, 137–38 (footnotes omitted).

During floor debates, individual congressmen and senators (some of whom sponsored the Bill) took issue with the last paragraph quoted above. *See,* 131 Cong. Rec. H4763 (daily ed. June 24, 1985) (remarks of Congressmen Kastenmeier and Kindness); *Id.* at S9993 (daily ed. July 24, 1985) (remarks of Senator Thurmond). The colloquy on the floors of the House and Senate was an attempt to reconcile Congress' conviction that the EAJA was not an automatic fee-shifting provision (see H.R.

Rep. No. 1418, 96th Cong., 2nd Sess. 11, *reprinted in* 1980 U.S. Code Cong. & Ad. News 4984, 4990) with the House Report's language indicating that fees would certainly be awarded if an agency's conduct was found to be arbitrary and capricious or unsupported by substantial evidence. The House Report apparently failed to recognize that the Administrative Procedure Act [5 U.S.C. § 706(2) (1982)] and long standing judicial precedent most often require a finding of arbitrary and capricious conduct or lack of substantial evidence if a court is to reverse agency action. Thus, in most every case where a plaintiff prevails, there would necessarily be a finding of arbitrary and capricious conduct or lack of substantial evidence, and, according to the House Report, an award of attorneys fees.

The floor debates emphasize that while Congress wanted to encourage the award of fees under the EAJA, the fact a party prevails does not automatically entitle it to an award. The floor debates show that a court should weigh the circumstances of each case to determine if the Government agency or litigation conduct was irresponsible. The intent of Congress to discourage arbitrary government action and to allow small economic entities to enforce their rights is necessarily part of the determination. *See National Resources Defense Council, Inc. v. EPA,* 703 F.2d 700 (3d Cir.1983). Recently, the U.S. Court of Appeals for the Federal Circuit, *en banc,* helped define the term "substantially justified" by equating it with a *"clearly* reasonable" standard. *Gavette v. Office of Personnel Management,* 785 F.2d 1568, 1579 (Fed.Cir.1986).

The House Report states that "the Congressional intent is to provide attorneys' fees when an unjustifiable agency action forces litigation, and the agency then [tries] to avoid such liability by reasonable behavior during the litigation." H.R.Rep. No. 120, 99th Cong., 1st Sess. 11, *reprinted in* 1985 U.S. Code Cong & Ad.News 132, 140. In the instant case, this Court is convinced that the agency's conduct was

**188**

not "clearly reasonable" or substantially justified. On the other hand, the Government's litigation position was justified. If some questionable defenses were asserted, considering the abbreviated nature of the injunction proceedings and the time in which the Department of Justice must take a position and respond, the Department should be accorded some deference. *See Essex Electro Engineers, Inc. v. United States,* 4 Cl.Ct. 463, 469 (1984), *aff'd,* 757 F.2d 247 (Fed.Cir.1985).

 Given the circumstances and the purpose of the Act, the court finds that EMI is entitled to reasonable attorneys fees and costs. The Coast Guard officer's behavior in misadvising EMI and the delay in notifying EMI that its bid was non-competitive, weigh heavily in this court's determination, as do the CAFC's findings. On the whole, this is a case where unjustifiable Government actions forced a plaintiff to vindicate its rights through litigation.

As to the amount of attorneys fees, the Government argues that only those fees associated with pursuing the award of bid preparation costs are recoverable and that fees spent unsuccessfully pursuing injunctive relief are not recoverable. However, the extent to which litigation should be dissected into discrete phases or claims for purposes of ruling on fee applications is a matter of judgment for the court. *Columbus Fruit and Vegetable Co-op. Ass'n v. United States,* 8 Cl.Ct. 525, 530 (1985); *Cinciarelli v. Reagan,* 729 F.2d 801, 804–05 (D.C.Cir.1984); *see Russell v. National Mediation Board,* 775 F.2d 1284, 1291–92 (5th Cir.1985) In any event, the issues and events here were not sufficiently significant or discrete from the plaintiff's overall success on the merits to warrant separate treatment. *See Devine v. Sutermeister,* 733 F.2d 892, 896–97 (Fed.Cir.1984).

The court is also not persuaded by plaintiff's argument that special factors such as the unavailability of government contracts counsel in Panama City, Florida warrant an award greater than the statutory rate of $75 per hour. Accordingly,

EMI is awarded fees of $63,662.95 based on the statutorily imposed rate of $75 per hour and awarded costs of $16,268.55 based on the uncontested cost figures submitted by the plaintiff.

The clerk will enter judgment for the plaintiff against the defendant in the amount of $79,931.50.