Ferdinand OLIVEIRA

v.

The UNITED STATES.

No. 212–85C.

United States Claims Court.

Oct. 10, 1986.

Joel V. Lumer, Miami, Fla., for plaintiff.

Charles R. Gross, with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and Robert A. Reutershan, Washington, D.C., for defendant.

## ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY FEES AND EXPENSES

WHITE, Senior Judge.

This case having been concluded by a settlement, the plaintiff has now filed with the court an application for reimbursement of attorney fees and other expenses under the Back Pay Act, 5 U.S.C. § 5596 (1982), or, alternatively, under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1982 Supp. III 1985). The defendant has filed a response in opposition to the application, and the plaintiff has replied to the defendant's response.

### Stipulated Facts

According to the joint stipulation of facts filed by the parties, the plaintiff, Ferdinand Oliveira, worked as a warehouseman at the Homestead Air Force Base (Homestead) in Florida from July 27, 1966, until June 9, 1978.

On September 10, 1976, the plaintiff received from his supervisor, Orris E. Skjervem, a letter of reprimand for insubordination.

On May 21, 1977, Mr. Skjervem suspended the plaintiff for 5 days, again on a charge of insubordination.

On April 14, 1978, Mr. Skjervem proposed to higher authority that the plaintiff be separated from the government service for alleged insubordination. The plaintiff responded to the charge by means of a letter dated May 4, 1978.

On June 2, 1978, the plaintiff was officially removed from his position at Homestead.

On September 27 and 28 of 1978, pursuant to the plaintiff's request, the Federal Employee Appeals Authority (FEAA) of the former Civil Service Commission held a hearing on the plaintiff's involuntary separation from the government service. On November 27, 1978, the FEAA affirmed the plaintiff's removal from his position as a warehouseman at Homestead.

### Judicial Proceedings

On February 20, 1980, the plaintiff filed an action against the United States in the United States District Court for the Southern District of Florida. There, the plaintiff alleged that the action of the FEAA in sustaining his separation from the service was arbitrary and capricious, or, alternatively, that his termination was an unwarranted personnel action entitling him to relief under the Back Pay Act. On November 18, 1982, the District Court granted the Government's motion for summary judgment, thereby affirming the agency's action and dismissing the case. *Oliveira v. United States*, No. 80–470, slip op. (S.D. Fla., Nov. 18, 1982).

The plaintiff appealed the District Court's decision to the United States Court of Appeals for the Eleventh Circuit on March 28, 1983. In response to an argument by the Government that the Eleventh Circuit did not have jurisdiction over the case, that court transferred the appeal to the United States Court of Appeals for the Federal Circuit on June 18, 1984. *Oliveira v. United States*, 734 F.2d 760, 761 (11th Cir.1984).

In the Federal Circuit, the United States maintained that the District Court acted without jurisdiction in purporting to review the plaintiff's claim concerning reinstatement and back pay. The Government contended that the Federal Circuit should remand the case to the District Court with instructions for it to vacate its opinion and transfer the case to the United States

Claims Court. The Federal Circuit did so, while also ordering a trial *de novo* in the Claims Court on whether the plaintiff's right to associate with and speak for blacks, as well as his right to equal protection of the law, had been violated. *Oliveira v. United States*, 765 F.2d 155 (Fed. Cir.1985).

The plaintiff filed his complaint in this court on April 25, 1985. In his complaint here, the plaintiff alleged that he was discharged from his job at Homestead in retaliation for his exercise of free speech and free association rights, and he argued that the FEAA's decision should be set aside as arbitrary and capricious.

On June 2, 1986, the parties filed with this court a stipulation for the entry of judgment in favor of the plaintiff pursuant to their out-of-court settlement. The court thereupon entered judgment for the plaintiff on June 6, 1986.

### Claim Under Back Pay Act

The Back Pay Act was amended by section 702 of the Civil Service Reform Act of 1978 (Pub.L. No. 95–454, 92 Stat. 1111, 1216) to permit the recovery of attorney fees (but not other expenses) under the Back Pay Act, 5 U.S.C. § 5596(b)(1)(A)(ii) (1982). The Civil Service Reform Act of 1978, however, contained a "savings provision" (set out as a note under 5 U.S.C. § 1101 (1982)), which states that the amendment to the Back Pay Act permitting the recovery of attorney fees does not apply to any administrative proceeding *pending* on January 11, 1979, the effective date of the Civil Service Reform Act of 1978.

The initial question to be decided in this case is whether the plaintiff's claim was pending on January 11, 1979.

The plaintiff asserts that he obtained a final decision from the FEAA on November 27, 1978, and, consequently, that he did not have any administrative proceeding pending on January 11, 1979. On that basis, the plaintiff contends that the Back Pay Act, as amended effective January 11, 1979, applies to his case.

The plaintiff's argument, however, must fail because it improperly construes the meaning of "pending," as used in the Back Pay Act following the amendment of January 11, 1979. Although the plaintiff had received a final administrative decision before January 11, 1979, the administrative decision in his case was still subject to judicial review on January 11, 1979. Indeed, the plaintiff actually sought, and obtained, judicial review after January 11, 1979.

In this respect, the plaintiff's situation is similar to that of the appellant Wilson in the case of *Wilson v. Turnage*, 791 F.2d 151 (Fed.Cir.1986). The Federal Circuit said (*id.* at 155) that, as the language of the Back Pay Act, as amended, did not show the intent of Congress concerning situations where final administrative decisions were rendered before January 11, 1979, but those decisions were still subject to judicial review on January 11, 1979, it was felt that the appellate court should be guided by the regulation promulgated by the Merit Systems Protection Board in construing and implementing the "savings provision" enacted by Congress when it amended the Back Pay Act to permit the payment of attorney fees.

That regulation provides as follows:

(b) *Administrative proceedings and appeals therefrom.* No provision of the Civil Service Reform Act shall be applied by the Board in such a way as to affect any administrative proceeding pending at the effective date of such provision. "Pending" is considered to encompass existing proceedings and appeals before the Board or its predecessor agencies, that were *subject to judicial review* or under judicial review on January 11, 1979, the date on which the Act became effective. [Emphasis in text added.]

Therefore, as the appellant Wilson's claim was still subject to judicial review on January 11, 1979, the Federal Circuit affirmed the decision of the United States District Court for the District of Columbia that the litigant was not entitled to attorney fees under the Back Pay Act.

■ The decision by the Federal Circuit in the *Wilson* case necessarily determines the law that must be applied by this court in the present case. Although the plaintiff obtained a final decision from the FEAA on November 27, 1978, his case was still subject to judicial review on January 11, 1979. Accordingly, the provision of the Back Pay Act, as amended effective January 11, 1979, permitting the award of attorney fees in future cases, is not applicable to the plaintiff's case, and his claim under that act must be denied.

### Claim Under Equal Access to Justice Act

In the alternative, the plaintiff applies for attorney fees and other expenses under the Equal Access to Justice Act (the EAJA), 28 U.S.C. § 2412 (1982 & Supp. III 1985). Under 28 U.S.C. § 2412(d)(1)(A), a plaintiff may recover for attorney fees and other expenses if (1) he is the prevailing party, and (2) if the position of the Government is not substantially justified.

(a) In the Administrative Proceedings

The EAJA permits the court to make an award for attorney fees and other expenses incurred during the antecedent administrative proceedings if certain criteria are met (28 U.S.C. § 2412(d)(3)). One of these criteria is that the administrative proceedings must qualify as an adversary adjudication, either under 5 U.S.C. § 504(b)(1)(C) (Supp. III 1985), or under the Contract Disputes Act of 1978.

The reference to the Contract Disputes Act of 1978 is obviously not pertinent to the plaintiff's case.

Moreover, as it relates to this case, 5 U.S.C. § 504(b)(1)(C) defines "adversary adjudication" as meaning "(i) an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise * * *"; and section 554(a)(2) excludes administrative proceedings relating to "the selection or *tenure*" of an employee, other than an administrative law judge (emphasis supplied). In this connection, the dismissal of the plain-

tiff from his position certainly concerned his tenure as an employee.

■ Accordingly, as the administrative proceedings in the plaintiff's case did not qualify as an "adversary adjudication" under either 5 U.S.C. § 504(b)(1)(C) or the Contract Disputes Act of 1978, the EAJA does not authorize this court to reimburse the plaintiff for the attorney fees and other expenses that he incurred during the administrative process. *See Hoska v. United States Department of the Army*, 694 F.2d 270, 272–73 (D.C.Circuit 1982).

(b) In the Judicial Process

(1) Prevailing Party

Concerning the various judicial proceedings in which the plaintiff engaged, it must be said that he certainly did not prevail in the District Court, where the court granted the *Government's motion* for summary judgment, and dismissed the case. Furthermore, he did not prevail in the Eleventh Circuit, where the appellate court, pursuant to the *Government's argument*, transferred the case to the Federal Circuit. In addition, the plaintiff did not prevail in the Federal Circuit, where the court, in response to the *Government's motion*, ordered the judgment of the District Court to be vacated and the case to be transferred to the Claims Court.

■ The plaintiff did succeed, however, in negotiating a settlement with the United States after filing suit in the United States Claims Court. The defendant concedes in its brief on the plaintiff's application for attorney fees and other expenses that this is sufficient for the plaintiff to qualify as a prevailing party in this court, for EAJA purposes. *See Martin v. Heckler*, 773 F.2d 1145, 1149 (11th Cir.1985); *National Treasury Employees Union v. Internal Revenue Service*, 735 F.2d 1277, 1278 (11th Cir. 1984).

(2) Government's Position

It is necessary, therefore, to consider whether the Government's position in the proceedings here were or were not substan-

tially justified. In this connection, the Federal Circuit recently ruled that the "substantially justified" standard means that the Government must establish that its position in court and at the agency level was *clearly* reasonable. *Gavette v. Office of Personnel Management*, 785 F.2d 1568, 1579 (Fed.Cir.1986, *en banc*).

It is difficult to find fault with the Government's position in court. The District Court, the Eleventh Circuit, and the Federal Circuit all accepted the Government's position in the respective courts as sound and legally correct. In this court, representatives of the Government collaborated with plaintiff's counsel in working out a joint stipulation of relevant facts and an agreed settlement, which granted the plaintiff the relief that he was seeking from the court. Whether the plaintiff would have received the same relief from the court if the case had gone to trial cannot be known.

Under the settlement stipulation, the plaintiff was reinstated in the position from which he was dismissed; he received back pay for the period of approximately 8 years when he was off the job; he was allowed to make retroactive contributions to the Civil Service Retirement Fund for the 8–year period; the Government made matching contributions to the Civil Service Retirement Fund for the 8–year period; and the plaintiff received 875 hours of accrued annual leave and 542 hours of accrued sick leave for such period.

It is also necessary to consider the position of the Government regarding the plaintiff's case when it was being handled at the administrative level.

In this connection, it will be recalled that, before the happening of the incidents which led to the dismissal of the plaintiff, his personnel record at Homestead already reflected a reprimand for insubordination on September 10, 1976, and a 5–day suspension for insubordination in May 1977.

The Notice of Proposed Removal which Mr. Skjervem served on the plaintiff under the date of April 18, 1978, used the following language in explaining the reason for the proposed action:

1. This is notice that I propose to remove you from your position of Warehouseman, WG–6907–04 no earlier than 30 calendar days from the date you receive this notice. This proposal is based upon a charge of insubordination. Specifically: at about 11:40 AM, 13 April 1978, I advised you that you were not loading the commissary trailer truck properly and that the merchandise was very likely to be damaged enroute. You said: "I've been loading the ttuck [sic] for 13 years! Its OK the way it is! If you want it loaded different, you do it yourself! You don't tell me what to do; you're not my father!", or words to that effect. You then walked out of the trailer with a hand truck and I followed you to the second aisle, where you proceeded to load the hand truck. I told you: "You will load that truck properly", or words to that effect. You said: "Get away from me, or I'll wrap the hand truck around your head". I walked back to my office and began to write a memorandum for the record, recording what had transpired. You walked up to my desk and in an almost simultaneous motion grabbed the paper from my hands, ripping it into several pieces, and stating "What are you writing?" I did not respond to your question, and as you left my office you said, "You're going to get yours", or words to that effect. As I reconstructed the memorandum, I overheard you say that I was "no good. I'm going to take care of him", or words to that effect. In considering the severity of this proposal, I have considered that you have previously received a Letter of Reprimand dated 10 September 1976 for insubordination and that you were suspended without pay during the period 21 through 25 May 1977 for insubordination.

The Notice of Proposed Removal described an incident of rather gross insubordination, coupled with a threat of physical violence. Obviously, the Air Force was amply justified in processing the charges in

order to determine whether or not they were sustained.

The plaintiff responded under the date of May 4, 1978, to the Notice of Proposed Removal. The response stated in part as follows:

First and foremost, I deny both your descriptions of the physical circumstances as they allegedly existed on April 13, 1978, and the dialogue between us. I did not make the oral statements you attribute to me.

You have apparently decided to finally carry out your threats to do anything you can to harm me because of your avowed dislike for me. Your repeated attempts to cause dissension, jealousy, petty differences, prejudices, etc. have generated a climate of mistrust, poor morale, and a number of other problems at the warehouse. Evenhanded, fair treatment has never been accorded to me by you. On every occasion possible, you have attempted to push, cajole and coerce me into remonstrating against you, and your frustration has culminated in the baseless charges for which you now seek my removal.

Although the plaintiff, in his response, flatly denied the factual allegations made against him in the Notice of Proposed Removal, and, in addition, asserted that Mr. Skjervem had previously made threats against him, the Air Force did not hold an evidentiary hearing to determine the truth or falsity of the charges against the plaintiff, or whether Mr. Skjervem had actually made threats against the plaintiff. Instead, the Commissary Store Manager at Homestead, who was the deciding officer for the Air Force, accepted the allegations against the plaintiff as proven, and, on June 2, 1978, rendered a decision in the plaintiff's case. The decision stated in part as follows:

* * * [T]he reasons stated in Mr. Skjervem's notice of 14 April 1978, paragraph 1 are fully supported by the preponderance of evidence and warrant your removal to promote the efficiency of the service. In considering the severity of this decision, I have considered that you have previously received a Letter of Reprimand dated 10 September 1976 for insubordination and that you were suspended without pay during the period 21 thru 25 May 1977 for insubordination. It is my decisions [sic] therefore, that you will be removed effective 10 June 1978.

The court concludes that the Air Force was not substantially justified in assessing against the plaintiff the maximum punishment of dismissal, without having accorded him an evidentiary hearing to determine the truth or falsity of the charges against him, and whether Mr. Skjervem had demonstrated prejudice against him, as he alleged.

The Government, however, afforded the plaintiff an administrative remedy in the form of an appeal to the FEAA.

On June 14, 1978, the plaintiff appealed to the FEAA from the action of the Air Force in terminating him from his position at Homestead. The FEAA held a hearing at Homestead, and both the plaintiff and the Air Force were represented at the hearing.

With respect to the charges on which the plaintiff was dismissed by the Air Force, the plaintiff testified at the hearing before the FEAA, but he could not remember very much about what happened between him and Mr. Skjervem on that occasion. He did recall, however, that Mr. Skjervem had told him, "I want that thing loaded properly, that truck loaded better than what it was." The plaintiff testified that he replied, "Skjervem, I have been loading this here for twelve and a half years, this truck. I have been loading it for twelve and a half years and nobody complained." The plaintiff testified that he then said to Mr. Skjervem, "You load it yourself." The plaintiff admitted that he walked away and did not stack the cargo as instructed. The plaintiff denied making any threats of violence toward Mr. Skjervem.

As Mr. Skjervem had died before the hearing, the FEAA accepted as evidence from the Air Force memoranda which Mr. Skjervem had prepared contemporaneously

with the events in question and which described them in language virtually identical with that contained in the Notice of Proposed Removal. Also, an Employee Relations Specialist at Homestead testified that he was familiar with the voices of the plaintiff and Mr. Skjervem; that about 11:50 a.m. on April 13, 1978, he received a call from Mr. Skjervem, who said that he was having a problem with the plaintiff; that during his conversation with Mr. Skjervem, he could hear the plaintiff "yelling in the background"; that the plaintiff was talking in a very loud voice and "sounded threatening"; and that he distinctly heard the plaintiff say that Mr. Skjervem was "no good," that "any man who would take money out of another man's pocket was no good," and that the plaintiff "would take care of" Mr. Skjervem.

With respect to the charge of insubordination, the FEAA stated as follows in its decision:

We have carefully considered all of the evidence of record with respect to the current charge of insubordination on April 13, 1978. Based upon our review, we find that the charge as stated in the advance notice is supported by a preponderance of the evidence and is sustained.

In addition, the FEAA received evidence on accusations by the plaintiff that he had long been a victim of unfair treatment by Mr. Skjervem because of such things as the plaintiff's Portuguese ancestry, Mr. Skjervem's personal animosity and prejudice against the plaintiff, and the plaintiff's friendliness with black employees in the warehouse. After considering the available evidence concerning these matters, the FEAA came to the conclusion that none of the plaintiff's accusations was sustained.

The FEAA affirmed the action of the Air Force in removing the plaintiff from his position at Homestead.

The Federal Circuit evidently determined at the appellate level that the FEAA was not substantially justified, on the basis of the record before the FEAA, in concluding that the plaintiff failed to sustain his accusations of unfair treatment by Mr. Skjer-

vem. As previously stated, The Federal Circuit ordered this court to conduct a trial *de novo* on whether the plaintiff's right to associate with and speak for blacks, as well as his right to equal protection of law, had been violated. (This became unnecessary when the parties agreed to settle the case.)

■ It must be held, therefore, that the Air Force was not substantially justified in dismissing the plaintiff, and the FEAA was not substantially justified in affirming the dismissal on the basis of the record before the FEAA.

In view of the holding that the position of the Government in the Air Force and in the FEAA was not substantially justified, it is now necessary to determine which of the attorney fees and other expenses, incurred by the plaintiff during the judicial proceedings, entitle the plaintiff to reimbursement under the EAJA.

### (3) Attorney Fees

■ The plaintiff is entitled to be reimbursed for all hours *reasonably* devoted by his counsel to the case during the judicial process (28 U.S.C. § 2412(b)). In this connection, the work done by plaintiff's counsel in unsuccessfully attempting to prosecute the plaintiff's cause of action in the District Court and in the Eleventh Circuit can hardly be regarded as effort reasonably expended, as neither court had jurisdiction over the case. Consequently, the court concludes that the plaintiff is not entitled to be reimbursed for attorney fees and expenses incurred in the District Court or in the Eleventh Circuit.

Data submitted to the court by the plaintiff show that plaintiff's counsel devoted a total of 37.41 hours of work to the plaintiff's case while it was in the Federal Circuit, and 73.73 hours to the case while it was in this court. The defendant does not contest the amount of time claimed by the plaintiff with respect to the case while it was in the two courts mentioned, and the total number of hours does not seem unreasonable. Accordingly, the plaintiff may be reimbursed for 111.14 hours of attorney time.

The EAJA (28 U.S.C. § 2412(d)(2)(A)) establishes a maximum award of $75 per hour, unless the court determines to adjust the hourly rate upward in order to compensate for some special factor (such as the limited availability of qualified attorneys), or to compensate for inflation. *See Chipman v. Secretary of Health and Human Services*, 781 F.2d 545, 547 (6th Cir.1986), stating that the $75 figure in the EAJA represents a statutory *ceiling*, not a statutory floor. In this case, there does not seem to be any special factor justifying an upward adjustment of the attorney rate, and, indeed, the plaintiff does not assert that any such factor exists. The plaintiff, however, does request that the rate be increased to compensate for inflation.

The language of the EAJA leaves it within the court's discretion to determine whether or not to adjust the hourly rate for inflation (28 U.S.C. § 2412(d)(2)(A)). That such an adjustment is not automatic is illustrated by those cases in which courts have made an award for attorney fees without granting an upward adjustment in the $75 hourly rate for an increase in the cost of living. *See, e.g., Chipman v. Secretary of Health and Human Services*, supra, 781 F.2d at 547; *Schuenemeyer v. United States*, 776 F.2d 329, 333 (Fed.Cir. 1985); *Eastern Marine, Inc. v. United States*, 10 Cl.Ct. 184, 188 (1986). On the other hand, several courts, responding to the particular facts before them, have adjusted the $75 rate upward in order to compensate for inflation. *See, e.g., Crumbaker v. Merit Systems Protection Board*, 781 F.2d 191, 196 (Fed.Cir.1986); *Hirschey v. Federal Energy Regulatory Commission*, 777 F.2d 1, 5 (D.C.Cir.1985); *Massachusetts Fair Share v. Law Enforcement Assistance Administration*, 776 F.2d 1066, 1069 (D.C.Cir.1985); *Continental Web Press, Inc. v. National Labor Relations Board*, 767 F.2d 321, 324 (7th Cir.1985).

Of particular relevance in determining whether to make the adjustment for inflation is the length of time that a litigant's counsel has had to wait before receiving payment. *See Crumbaker v. Merit Systems Protection Board, supra*, 781 F.2d at 196 (adjusting the $75 rate for inflation because of a 5–year delay); *Hirschey v. Federal Energy Regulatory Commission, supra*, 777 F.2d at 5 n. 24 (adjusting the $75 rate for inflation because of a 4–year delay).

A minimal delay does not seem to justify making the adjustment. As the D.C. Circuit has said: "Some delay in receipt of payment is inevitable in the law. * * * Accordingly, any minimal delay may be properly ignored * * * in making a fee award." *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1328 (D.C.Cir.1982).

■ In this case, the plaintiff's attorney began work on the case in the Federal Circuit on or about June 20, 1984. To date, he has waited approximately 2 years and 4 months. This amount of delay does not seem sufficient to justify adjusting upward a statutory ceiling set by Congress. Therefore, the plaintiff's request to have the $75 hourly rate adjusted upward for inflation is denied.

To reimburse the plaintiff for attorney fees, he is entitled to receive $8,335.50, based upon 111.14 hours at $75 per hour.

### (4) Other Expenses

As in the case of attorney fees based upon work by counsel while this case was in the District Court and in the Eleventh Circuit—courts which had no jurisdiction over the case—this court regards as unreasonable, for EAJA purposes, other expenses incurred by the plaintiff while his case was in those courts. Consequently, consideration will be given only to the plaintiff's claim based upon litigation expenses incurred while the case was in the Federal Circuit and in the Claims Court.

The plaintiff requests reimbursement for the expenses incurred: in photocopying; in the printing and binding of briefs; in the use of telephone, postal, Federal Express, and Express Mail services; in gaining admission to the Bars of the Claims Court and the Federal Circuit; and in securing certificates of good standing in the courts

just mentioned. No reimbursement, however, may be awarded for any of these expenses.

▇ First, under 28 U.S.C. § 1920(4) (1982), photocopying is a court cost. *See Bennett v. Department of the Navy*, 699 F.2d 1140, 1146 (Fed.Cir.1983); *Allen v. United States Steel Corp.*, 665 F.2d 689, 697 n. 5 (5th Cir.1982). The Federal Circuit has already held that the parties would bear the costs they had incurred up to that point in these proceedings. *Oliveira v. United States*, 765 F.2d 155 (table) slip op. at 6 (Fed.Cir.1985). Moreover, this court, in the judgment which it entered on June 6, 1986, disallowed an award of costs incurred in the Claims Court. Because photocopying is a cost, and costs have been denied in this case, the plaintiff may not recover for its photocopying costs.

▇ Second, the language of 28 U.S.C. § 2412(d)(2)(A) defining expenses does not seem to allow the court to make an award covering the other items for which the plaintiff seeks reimbursement. The statutory provision just cited, as examples of reimbursable expenses, mentions the cost of hiring expert witnesses and the cost of a study or report needed for the preparation of a party's case. These seem to be exceptional expenses that do not arise as a matter of course in providing legal services. In contrast, expenses for which the plaintiff seeks reimbursement, such as the cost of printing and binding briefs, and travel, telephone, and postage expenses, are expenses ordinarily arising in the course of providing legal services. Consequently, they do not appear to fall within the scope of reimbursable expenses under the EAJA. In particular, it seems to be well established that courts will not reimburse parties for such items as travel, telephone, and postage expenses. *See Massachusetts Fair Share v. Law Enforcement Assistance Administration, supra*, 776 F.2d at 1069 (denying an award for travel, telephone, and postage expenses); *Action on Smoking and Health v. Civil Aeronautics Board*, 724 F.2d 211, 224 (D.C.Cir.1984) (refusing an award for postage expenses under the EAJA); *NAACP v. Donovan*, 554 F.Supp. 715, 719 (D.D.C.1982) (denying an award for travel and telephone expenses under the EAJA).

In light of the language of section 2412(d)(2)(A), and the existing case law, the plaintiff's request for reimbursement of printing and binding expenses, as well as telephone, postage, Federal Express, and Express Mail expenses, must be denied.

The plaintiff has not cited any authority to support his request to be reimbursed for expenses incurred by counsel in obtaining admission to the Bars of the Claims Court and the Federal Circuit, and in securing certificates of good standing in these courts. As pointed out by the defendant, such admissions are more in the nature of an ongoing benefit to the plaintiff's counsel, which may prove useful to him in any number of future cases, than an expense incurred in the handling of this particular case. Therefore, it is concluded that these admission expenses must also be denied.

### Conclusion

For the reasons stated in the foregoing discussion, it is concluded that the plaintiff is entitled to reimbursement for attorney fees in the amount of $8,335.50, and is not entitled to reimbursement for any other expenses.

Therefore, an award of $8,335.50 is made to the plaintiff under the Equal Access to Justice Act as reimbursement for attorney fees.

The clerk will convert this award into an appropriate judgment.

IT IS SO ORDERED.