# In the United States Court of Federal Claims

No. 16-101C

(Filed: July 5, 2017)

|  |  |  |
|---|---|---|
| **Q INTEGRATED COMPANIES, LLC,** | ) | Trial court's jurisdiction over a case after |
| | ) | an appeal has been filed |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **SAGE ACQUISITIONS, LLC,** | ) | |
| | ) | |
| **Defendant-Intervenor.** | ) | |
| | ) | |

James C. Fontana, Dempsey Fontana, PLLC, Tysons Corner, Virginia for plaintiff. With him on the briefs were David B. Dempsey and Jeffry R. Cook, Dempsey Fontana, PLLC, Tysons Corner, Virginia.

Heidi L. Osterhout, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for defendant. With her on the briefs were Chad A. Readler, Acting Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Rosamond Z. Xiang, Trial Attorney, United States Department of Housing & Urban Development, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Pending before the court are plaintiff's application for bid preparation and proposal costs ("bid costs"), ECF No. 82, and plaintiff's motion for attorneys' fees and related nontaxable expenses ("attorneys' fees"), ECF No. 90, the latter of which has been filed invoking the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). The application and motion are premised upon the court's partial grant of Q Integrated's motion for judgment on the administrative record on April 20, 2016, awarding a measure of injunctive relief and bid preparation and proposal costs, both in accord with 28 U.S.C. § 1491(b)(2). *See Q Integrated*

*Cos., LLC v. United States*, 126 Fed. Cl. 124, 148 (2016) ("*Q Integrated I*"), *appeal dismissed*, No. 2016-1991 (Fed. Cir. June 2, 2016). Thereafter, the court suspended briefing on plaintiff's application for bid costs and motion for attorneys' fees pending the Small Business Administration's ("SBA's") resolution of size appeals involving Q Integrated and defendant-intervenor Sage Acquisitions, LLC ("Sage"). *See* Order of Aug. 18, 2016, ECF No. 93. Following the SBA's determinations that both Q Integrated and Sage were "other than small" with regard to contract awards not before the court in this case, the court considered and denied the government's motion for relief from judgment under Rules 60(b)(2), (b)(5), and (b)(6) of the Rules of the Court of Federal Claims ("RCFC"). *See generally Q Integrated Cos., LLC v. United States*, 131 Fed. Cl. 125 (2017) ("*Q Integrated II*"), *appeal filed*, No. 2017-2090 (Fed. Cir. May 25, 2017). On March 27, 2017, the court lifted the suspension of briefing on plaintiff's application for bid costs and motion for attorneys' fees, *see* Scheduling Order of Mar. 27, 2017, ECF No. 113, and the parties have briefed the application and motion. As briefing was being completed, on May 25, 2017, the government appealed the court's denial of the motion for relief from judgment, which appeal remains pending before the Federal Circuit.

Plaintiff's application for bid costs and motion for attorneys' fees have been fully briefed. For the jurisdictional and prudential reasons stated, however, the court suspends consideration of the application and motion until the government's appeal has been resolved.

## BACKGROUND

The facts of this case have been extensively detailed in the court's previous opinions, *see Q Integrated I*, 126 Fed. Cl. at 128-39; *Q Integrated II*, 131 Fed. Cl. at 128-31, and will be concisely summarized here. In July 2014, the Department of Housing and Urban Development ("HUD") issued a solicitation for Asset Management contracts in twelve geographic areas of the United States. *Q Integrated II*, 131 Fed. Cl. at 128 (citations omitted). These contracts cover marketing and sales services for HUD's "inventory of single-family homes obtained as a result of mortgage defaults." *Q Integrated I*, 126 Fed. Cl. at 128. Certain contracts, including those for the three areas at issue in this case, Areas 7A, 1D, and 5P, were intended to be small business set-aside contracts. *See id.* at 129. HUD awarded contracts for Areas 7A, 1D, and 5P to Sage, despite the fact that Q Integrated presented a lower-priced offer for each of those areas. *Q Integrated II*, 131 Fed. Cl. at 128. Sage had a higher past performance rating than Q Integrated for all three areas, and therefore "HUD determined that the proposal from Sage 'provided the best value based on a trade-off between its higher past performance rating and the price difference over the lowest-priced offer.'" *Id.* (quoting *Q Integrated I*, 126 Fed. Cl. at 136).

In its protest before this court, Q Integrated contended that "HUD 'improperly evaluated its past performance information, with the result that Q Integrated unfairly received an overall past performance rating of Fair/Some Confidence,' that HUD's evaluation of Sage's past performance was irrational, and that HUD failed to hold 'meaningful discussions' with Q Integrated in contravention of the solicitation and the Federal Acquisition Regulations ('FAR')." *Q Integrated II*, 131 Fed. Cl. at 128-29 (citing *Q Integrated I*, 126 Fed. Cl. at 138, 140, 142, 144). Based on HUD's prejudicial errors in the procurement, the court granted Q Integrated's motion for judgment on the administrative record in part, awarding partial injunctive relief that "did not disturb the award of the Asset Management contracts for Areas 7A, 1D, and 5P to Sage

for the base period and the first option year," *Q Integrated II*, 131 Fed. Cl. at 129, but ordered HUD to either allow Q Integrated to revise its proposal and then conduct a new evaluation for the three areas at issue for the remaining option years, or to conduct an entirely new solicitation, *Q Integrated I*, 126 Fed. Cl. at 147-48. The court also awarded bid preparation and proposal costs to Q Integrated. *Id.* at 148. Judgment was entered on April 21, 2016, ECF No. 74.

Following the entry of judgment, Q Integrated filed its application for bid costs on May 18, 2016. *See generally* Pl.'s Appl. for Bid Preparation and Proposal Costs ("Pl.'s Appl."), ECF No. 82. The government appealed the judgment, and the court stayed the case and suspended briefing on the application for bid costs until the appeal was resolved. *See* Order of May 25, 2016, ECF No. 85. The court lifted the stay and suspension on June 23, 2016, after the government voluntarily dismissed its appeal. *See* Order of June 23, 2016, ECF No. 87. On the day prior, June 22, 2016, the government had filed a motion for relief from judgment under RCFC 60(b), ECF No. 86. On July 19, 2016, Q Integrated filed its motion for attorneys' fees. *See generally* Pl.'s Mot. for Att'ys' Fees and Related Nontaxable Expenses ("Pl.'s Mot."), ECF No. 90. The court again suspended briefing on the application and motion on August 18, 2016, pending the resolution of SBA size appeals for Q Integrated and Sage for areas of the HUD procurement that were not at issue in this case. Order of Aug. 18, 2016; *see also Q Integrated II*, 131 Fed. Cl. at 129-31. On March 27, 2017, the court lifted the suspension of briefing on Q Integrated's application for bid costs and motion for attorneys' fees, *see* Scheduling Order of Mar. 27, 2017, and both have been fully briefed.

Following the SBA's determinations that both Q Integrated and Sage were "other than small" with regard to areas of the HUD procurement not involved in this case, the government claimed in its motion for relief from judgment that Q Integrated had lost standing to bring a protest of the award to Sage for Areas 7A, 1D, and 5P. *See Q Integrated II*, 131 Fed. Cl. at 130. Relying on *Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353 (Fed. Cir. 2015), and *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed. Cir. 2001), the court disagreed, finding that Q Integrated remained an interested party and therefore maintained standing to bring its protest because the SBA's size determinations eliminated virtually all small-business-qualified offerors, and denied the government's motion. *See Q Integrated II*, 131 Fed. Cl. at 132-34. The court's judgment "remain[ed] in effect," although the court extended the time within which HUD must comply with the court's injunction. *See id.* at 134 ("Given the passage of time . . . an extension of time should be granted, and HUD's awards of the Asset Management contracts to Sage for Areas 7A, 1D, and 5P shall remain undisturbed for six months into the second option year, *i.e.*, until November 30, 2017. After that date, HUD must comply with the judgment."). On May 25, 2017, the government appealed the court's denial of its motion for relief from judgment. That appeal remains pending before the Federal Circuit. The government has not, however, requested a stay of the injunction in light of its appeal.

## JURISDICTION

The court must determine whether it retains jurisdiction over Q Integrated's application for bid costs and motion for attorneys' fees while the merits of this case are on appeal before the Federal Circuit. "The filing of a notice of appeal is an event of jurisdictional significance – it

confers jurisdiction on the court of appeals and divests the [trial] court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Even so, the trial court retains jurisdiction and control of collateral matters while the merits of a case are on appeal. *See, e.g.*, *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004); *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 524-25 (5th Cir. 2002). Thus, before the court can assess the substance of Q Integrated's application for bid costs and motion for attorneys' fees, the issue before the court is whether one or both of these motions are part of the merits of this case or collateral thereto.

## A. Bid Preparation and Proposal Costs

Bid preparation and proposal costs are available as relief in a bid protest case pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12(a), 110 Stat. 3870, 3874. The Tucker Act specifically provides that "[t]o afford relief in [a bid protest] action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2); *see also PGBA, LLC v. United States*, 389 F.3d 1219, 1226 (Fed. Cir. 2004) ("[T]he language of 28 U.S.C. § 1491(b)(2), . . . through use of the permissive 'may,' provides the Court of Federal Claims with discretion in fashioning relief."). Bid preparation and proposal costs constitute those "costs incurred in preparing, submitting, and supporting bids and proposals (whether or not solicited) on potential [g]overnment or non-[g]overnment contracts," 48 C.F.R. ("FAR") § 31.205-18(a), and "are allowed to the extent that they are both allocable and reasonable," *Geo-Seis Helicopters, Inc. v. United States*, 79 Fed. Cl. 74, 80 (2007) (citing FAR § 31.205-18(c)). Here, the court awarded Q Integrated "its reasonable costs incurred in bid preparation and proposal" because practical considerations in administering and re-soliciting the contracts at issue led the court to limit its grant of injunctive relief to the second, third, and fourth option years of the contracts. *Q Integrated I*, 126 Fed. Cl. at 147-48.[1]

A claim for relief is deemed to be part of the merits when the claim "remed[ies] the injury giving rise to the action." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988). An award of bid preparation and proposal costs remedies the injury giving rise to a bid protest, that is, it remedies an "interested party['s] objecti[on] to a solicitation by a [f]ederal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Bid preparation and proposal costs in essence are damages awarded to a protestor to provide relief for its wasted efforts in bidding on an unfair, erroneous, or illegal procurement. *See, e.g.*, *Afghan Am. Army Servs. Corp. v. United States*, 90 Fed. Cl. 341, 365, 369 (2009) (awarding bid preparation and proposal costs to the protestor "as the remedy for the flawed evaluation of its proposal"). "[A] losing competitor may recover the costs of preparing its unsuccessful proposal if it can establish that the [g]overnment's

---

[1]Upon denying the government's motion for relief from judgment, the court further limited its injunction due to the passage of time. *Q Integrated II*, 131 Fed. Cl. at 134. The injunction now goes into effect six months into the second option year, *i.e.*, after November 30, 2017, and extends through the fourth option year. *Id.*

consideration of the proposal submitted was arbitrary or capricious or in violation of applicable statute or regulation." *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 656 (2003); *see also Bannum, Inc. v. United States*, 56 Fed. Cl. 453, 462 (2003) ("If plaintiff becomes a disappointed offeror because another vendor is awarded the contract or if the solicitation is cancelled, it could be entitled to bid preparation costs if it could show in those circumstances that the government action was illegal and that it was prejudiced by the illegality.") (citing *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed. Cir. 1996)). A protestor thus must prevail on the merits at least in part before the court can grant an award of bid preparation and proposal costs. If a protestor cannot show that there were errors in the procurement process and that it was prejudiced by those errors, *i.e.*, if the protestor cannot show that it has been injured, it is not entitled to recover bid preparation and proposal costs. An award of bid preparation and proposal costs is thus inextricably dependent on the determination of the merits of the protestor's claim, and must be addressed by the court as part of the merits of that claim.

Because Q Integrated's application for bid preparation and proposal costs is an integral part of the merits of its bid protest, this court was divested of jurisdiction over the application when the government filed its notice of appeal. *See Griggs*, 459 U.S. at 58. Therefore, the court cannot consider plaintiff's application for bid costs until the appeal is resolved. *See CNA Corp. v. United States*, 83 Fed. Cl. 1, 6 (2008) (finding jurisdiction over protestor's application for bid preparation and proposal costs *after* an appeal had been withdrawn), *aff'd*, 332 Fed. Appx. 638 (Fed. Cir. 2009). Accordingly, this court's consideration of Q Integrated's application for bid costs is suspended until the completion of appellate proceedings before the Federal Circuit.

*B. Attorneys' Fees*

Q Integrated also seeks an award of attorneys' fees under EAJA. EAJA provides in relevant part:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Under EAJA, "fees and other expenses" include reasonable attorneys' fees. 28 U.S.C. § 2412(d)(2)(A).

Unlike bid preparation and proposal costs, claims for attorneys' fees are "not part of the merits of the action to which the fees pertain." *Budinich*, 486 U.S. at 200. Rather, a claim for attorneys' fees is always collateral to the merits, and therefore does not prevent a judgment from being final for the purposes of appeal under 28 U.S.C. § 1291. *See Ray Haluch Gravel Co. v. Central Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs*, __ U.S. __, __, 134 S. Ct. 773, 779-80 (2014) (explaining that *Budinich* sets forth "a uniform rule that an unresolved issue of attorney's fees for the litigation does not prevent judgment on the merits

5

from being final"). Therefore, the trial court maintains jurisdiction over claims for attorneys' fees while the merits of a case are on appeal. *See, e.g.*, *Tancredi*, 378 F.3d at 225 ("[N]otwithstanding a pending appeal, a [trial] court retains residual jurisdiction over collateral matters, including claims for attorneys' fees.") (citations omitted); *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816-17 (5th Cir. 1997) ("A [trial] court has jurisdiction to rule on a motion for ancillary attorneys' fees even after the filing of a notice of appeal with respect to the underlying claims."); *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989) (explaining that the trial court "may award attorneys' fees while the court of appeals addresses the merits").

Although the court thus retains jurisdiction over Q Integrated's motion for attorneys' fees and costs under EAJA, prudential considerations dictate that the court should withhold its assessment of the motion until the government's merits appeal is resolved. To be awarded attorneys' fees under EAJA, Q Integrated must be the prevailing party. "[F]or attorney fee purposes, . . . a prevailing party under . . . EAJA is one succeeding on any significant issue which achieves some of the benefits sought by the suit." *Owen v. United States*, 861 F.2d 1273, 1274 (Fed. Cir. 1988). Pursuant to the court's judgment, Q Integrated is a prevailing party because the court granted its motion for judgment on the administrative record in part and also awarded injunctive relief and bid preparation and proposal costs. *See Q Integrated I*, 126 Fed. Cl. at 148; *see also Eastern Marine, Inc. v. United States*, 10 Cl. Ct. 184, 186 (1986) (finding that plaintiff was a prevailing party under EAJA because it was "successful in obtaining at least one significant form of requested relief") (citation omitted). On appeal, however, the Federal Circuit could overturn the court's decision to deny relief from judgment under RCFC 60(b), which might mean that Q Integrated would no longer be a prevailing party in this action and therefore would not be entitled to attorneys' fees under EAJA. In accord with this uncertainty, the court reserves judgment on Q Integrated's motion for attorneys' fees until Q Integrated's status as a prevailing party is resolved by the result of the government's appeal. *See Furman v. Cirrito*, 782 F.2d 353, 355-56 (2d Cir. 1986) ("It is often sound policy, of course, to wait until a controversy is finally decided on the merits before awarding costs, and to then determine who is the 'prevailing party,' instead of judging that issue piecemeal at each stage of the litigation.").

Further, the court prefers to consider Q Integrated's motion for attorneys' fees at the same time as it addresses Q Integrated's application for bid costs. Although the application and motion have different legal bases, simultaneous consideration of the application and motion would enable the court to avoid overlaps and inconsistencies. In the circumstances at hand, "it would be an unproductive use of everyone's time to . . . review a detailed . . . submission [regarding attorneys' fees] prior to resolution of the appeal," *CNA Corp.*, 83 Fed. Cl. at 6, and therefore the court shall suspend consideration of Q Integrated's motion for attorneys' fees until the government's appeal has been resolved.

**CONCLUSION**

For the reasons stated, plaintiff's application for bid preparation and proposal costs and motion for attorneys' fees and related nontaxable expenses are SUSPENDED pending the resolution of the government's appeal from the court's denial of its motion for relief from judgment. The parties are ordered to file a joint status report with the court within ten days after the Federal Circuit renders a decision in that appeal.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge