**Stephen TANCREDI, et ano., Plaintiffs,**

**v.**

**METROPOLITAN LIFE INSURANCE COMPANY, et ano., Defendants.**

No. 00 Civ. 5780(LAK).

United States District Court,
S.D. New York.

April 8, 2003.

Michael P. Malakoff, Malakoff Doyle & Finberg, P.C., Pittsburgh, PA, Barry A. Weprin, Milberg Weiss Bershad Hynes & Lerach, LLP, New York City, Peter Wasylyk, Law Offices of Peter Wasylyk, Providence, RI, for Plaintiffs.

Bruce E. Yannett, Carl Micarelli, Debevoise & Plimpton, New York City, Duncan J. Logan, Metropolitan Life Insurance Company, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiffs in this case challenged the demutualization of Metropolitan Life Insurance Company ("MetLife") on constitutional grounds, suing pursuant to 42 U.S.C. § 1983. This Court dismissed the complaint, holding that plaintiffs had failed to allege the requisite state action and, in any case, that their constitutional claims lacked merit.[1] The Court of Appeals affirmed on the state action ground without reaching plaintiffs' other contentions.[2] MetLife now moves for attorneys' fees pursuant to 42 U.S.C. § 1988 as a prevailing party. Plaintiffs resist, contending that the motion is untimely, foreclosed by the mandate rule, and in any case without merit.

*Procedural Objections*

*A. Facts*

Judgment dismissing the amended complaint was entered on July 11, 2001. Plaintiffs filed a notice of appeal on July 27, 2001. On August 2, 2001, twenty-two days after entry of judgment, MetLife

1. *Tancredi v. Metro. Life Ins. Co.,* 149 F.Supp.2d. 80 (S.D.N.Y.2001).

2. 316 F.3d 308, 312–14 (2d Cir.2003).

moved for attorneys' fees. In an October 17, 2001 order, the Court denied the motion without prejudice to renewal within fourteen days following entry of the appellate mandate. The mandate was entered on February 27, 2003. The renewed motion was filed eight days later, on March 7, 2003.

## B. Analysis

Federal Rule of Civil Procedure 54(d)(2)(B) provides in relevant part that "[u]nless otherwise provided by statute or order of the court, the motion [for attorneys' fees] must be filed and served no later than 14 days after entry of judgment...." Rule 6(b)(2) provides in relevant part that the Court may enlarge certain time periods afforded under the rules "upon motion made after the expiration of the specified period ... where the failure to act was the result of excusable neglect...."

Plaintiffs argue that the renewed motion for attorneys' fees is untimely because:

1. The initial motion was filed twenty-two days after the entry of judgment and thus beyond the fourteen day period provided in Rule 54(d)(2)(B);

2. In any case, the motion was filed after the filing of the notice of appeal supposedly divested this Court of jurisdiction to pass on MetLife's initial motion;

3. MetLife never moved for enlargement of the fourteen day period and, in any case, never made a showing of excusable neglect;

3. The pendency of the appeal, the lack of a motion for extension of the fourteen day period, and the lack of a showing of excusable neglect negate the extension of time implicit in the October 17, 2001 order.

This argument in most respects is utterly frivolous.

### 1. The Effect of the Notice of Appeal

To begin with, the filing of the notice of appeal quite did not divest this Court of jurisdiction to pass on the initial motion for attorneys' fees. To be sure, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." [3] As the Court of Appeals has said however, "[t]he divestiture of jurisdiction rule is ... not a per se rule. It is a judicially crafted rule rooted in the interest of judicial economy, designed 'to avoid confusion or waste of time resulting from having the same issues before two courts at the same time.'" [4] The touchstone is efficiency. [5]

There is simply no reason to suppose that the filing of a notice of appeal from a final judgment ousts the district court of jurisdiction to determine a motion for attorneys' fees. Indeed, the Supreme Court—in a decision cited by plaintiffs— has made clear that an application for attorneys' fees is a collateral issue independent of the merits which the court may consider even years after the principal suit is over. [6] This of course implies that an

---

**3.** *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982), *quoted in United States v. Rodgers,* 101 F.3d 247, 251 (2d Cir.1996).

**4.** *Rodgers,* 101 F.3d at 251 (quoting *United States v. Salerno,* 868 F.2d 524, 540 (2d Cir. 1989)).

**5.** *Id.*

**6.** *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

appeal on the merits does not oust the district court of jurisdiction over such a motion. And if there were any doubt on the matter, it would have been eliminated by the 1993 Advisory Committee Note to Rule 54(d)(2), which specifically noted that a district court remains free, notwithstanding an appeal from a judgment on the merits, to award attorneys' fees during the pendency of the appeal and, of special importance to this case, to defer such a motion until the appeal is decided:

> "Filing a motion for fees under this subdivision does not affect the finality or the appealability of a judgment, though Revised Rule 58 provides a mechanism by which prior to appeal the court can suspend the finality to resolve a motion for fees. If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved. A notice of appeal does not extend the time for filing a fee claim based on the initial judgment, but the court under subdivision (d)(2)(B) may effectively extend the period by permitting claims to be filed after resolution of the appeal."

Thus, there is not the slightest responsible doubt that this Court was empowered, notwithstanding the pendency of the appeal, to act on MetLife's initial motion for attorneys' fees.[7]

### 2. Timeliness

This brings us to plaintiffs' next contention, viz. that the untimeliness of MetLife's initial motion precluded the Court from denying the motion without prejudice to renewal after disposition of the appeal. The premise of the argument, of course, is that Rule 6(b)(2) qualifies the Court's power under Rule 54(d)(2)(B) to provide a time other than fourteen days from the entry of judgment for the filing of a motion for attorneys' fees, at least once the fourteen day period has elapsed. This contention also is without merit for several reasons.

■ First of all, plaintiffs hang their hat on the supposed inconsistency between Rule 54(d)(2)(B)'s open-ended grant of power to extend time and Rule 6(b)(2)'s requirement of a showing of excusable neglect where the application for an extension is made after expiration of the prescribed time period. If the revisors had meant simply to fix a deadline for the filing of attorneys' fee motions while leaving Rule 6(b)(2) to control any extensions, however, it would have been necessary to set forth in Rule 54(d)(2)(B) only the fourteen day period for such motions. The opening phrase of the Rule—"[u]nless otherwise provided by statute or order of the court"—would have been entirely superfluous. The most reasonable reading of the rules in light of the 1993 amendment to Rule 54 therefore is that district courts have discretion to fix the timing of attorneys' fees motions, before or after the fourteen day period expires, without regard to Rule 6(b)(2). In consequence, no showing of excusable neglect was required.

■ Second, whatever showing might be required for an extension of the fourteen day period, either by Rule 54(d)(2) or by Rule 6(b)(2), has been made.[8] The

---

7. *See Chalais v. Milton Bradley Co.*, No. 95 Civ. 0737(MBM), 1996 WL 524336, at *2 (S.D.N.Y. Sept.16, 1996) (collecting cases); *accord United Indus., Inc. v. Simon–Hartley, Ltd.*, 91 F.3d 762, 764 (5th Cir.1996); *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995).

8. *See Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (whether neglect

failure to file the initial motion within the fourteen day period obviously was inadvertent, and plaintiffs do not argue otherwise. Judges repeatedly have allowed late fee motions where, as here, the delay was short, inadvertent, resulted in no prejudice and was not a product of bad faith.[9]

### 3. Lack of Formal Motion

 Plaintiffs' further contention that, even assuming the existence of excusable neglect, the lack of a formal motion for an extension of the fourteen day period is fatal is virtually preposterous. A formal motion is nothing more than a means of bringing a request for relief to the attention of the Court in an orderly way [10] and, in most cases, to afford the nonmoving party notice of the request. Here, plaintiffs have had ample notice and opportunity to be heard at every stage of MetLife's application. The fact that a particular non-jurisdictional piece of paper was not filed is of no moment.

### 4. The Effect of the Mandate

Finally, plaintiffs' contention that an award of attorneys' fees is precluded by the mandate rule is at least as frivolous as the arguments previously addressed. The attorneys' fee issue was not before the Court of Appeals, so its mandate quite plainly did not decide the issue. Nor is there anything in the mandate precluding this Court now from addressing it. Thus, this Court is free to decide whether an award of attorneys' fees is appropriate in this case.[11]

### The Merits

### A. The Governing Standard

As plaintiffs contend, "Section 1988 allows an award of defendants' attorney's fees only where the court finds that the plaintiff's claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." [12] The Court assumes, moreover, that plaintiffs are right in asserting that an award of attorneys' fees to a prevailing defendant would be inappropriate "if a claim presents an issue of first impression." [13] In so assuming however, it is critically important to bear in mind that

---

is excusable hinges on such factors as "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.").

**9.** *E.g., Sokoloff v. Gen. Nutrition Cos.*, No. Civ. A. 00–641(JBS), 2001 WL 536072, at *3 (D.N.J. May 21, 2001); *McPhatter v. Cribb*, No. 97–CV–0360E (F), 2000 WL 743972, at *1 (W.D.N.Y. May 25, 2000); *Walker v. City of Bogalusa*, No. CIV.A. 96–3470, 1997 WL 666203, at *1 (E.D.La. Oct.24, 1997), *aff'd*, 168 F.3d 237 (5th Cir.1999); *Blissett v. Casey*, 969 F.Supp. 118, 123–24 (N.D.N.Y.1997), *aff'd*, 147 F.3d 218 (2d Cir.1998); *Anderson v. Ford Motor Co.*, No. CIV.A. 96–CV–913, 1997 WL 158133, at *1 n. 1 (E.D.Pa. Apr.1, 1997); *Schwartz v. Dolan*, 159 F.R.D. 380, 385–86 (N.D.N.Y.1995), *vacated on other grounds*, 86 F.3d 315 (2d Cir.1996). *But see Mattel, Inc.*

*v. Radio City Entm't*, 210 F.R.D. 504, 505 (S.D.N.Y.2002) (denying as untimely motion for attorneys' fees filed seven weeks after entry of judgment due to attorney inadvertence).

**10.** *See* FED. R. CIV. P. 7(b).

**11.** *See Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A.*, No. 94CV 5835(RCC), 2001 WL 185134 (S.D.N.Y. Feb.23, 2001) (mandate rule inapplicable where Court of Appeals neither presented with nor ruled on motion for attorneys' fees); *cf. Van Gemert v. Boeing Co.*, 590 F.2d 433, 436 n. 9 (2d Cir. 1978).

**12.** Pl. Supp. Mem. 5 (citing *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)).

**13.** *Id.* 6 (citing *Thomas v. Metroflight, Inc.*, 814 F.2d 1506, 1512 (10th Cir.1987)).

the question whether a case is one of "first impression" in any sense relevant to this analysis is a matter of degree, not of kind. Indeed, at too high a level of generality, there are no cases of first impression, while at too low a level, every case is one of first impression.[14]

Fixing the level of pertinent generality is crucial. The infinite variability of human experience means that every tort claim based on a driver running a red light and striking a pedestrian is different in some way. The legal principles that govern such cases, however, have not changed in a very long time. Motorists who take unreasonable risks in operating their vehicles, such as by running red lights, are liable for injuries proximately caused by such actions. Hence, although every motor vehicle accident case is one of "first impression," there are very few indeed in which the factual context from which they are born requires courts to give serious consideration to altering or adjusting legal rules in order to resolve them. So too in all areas of the law. Thus, when courts speak of issues of first impression, they speak only of these relatively few cases, which require consideration of adjustments of substantive rules of law.

This is an appropriate framework for considering awards of attorneys' fees to prevailing defendants in Section 1988 cases. Our cherished right of access to the courts and our long standing rejection of the "English rule" demand that plaintiffs remain free to bring their grievances to our *fora* without fear of substantial adverse economic consequences if they fail. By the same token, however, Section 1988 reflects Congress' determination that courts should be free to deter abuse of our civil rights laws that occurs when cases are brought that are doomed in advance. This is the essence of the *Christiansburg Garment*[15] standard.

*B. Application*

■ Plaintiffs, in this Court's view, quite plainly crossed the line in this case. They claimed that the demutualization of MetLife violated the civil rights laws. In order to prevail, they had to establish—as they acknowledge—that "a converting mutual company acted as a 'state actor' within the meaning of 42 U.S.C. § 1983."[16] Regardless of whether that question had arisen on precisely the same or closely analogous facts, however, the level of generality to which plaintiffs resort in asserting that this is a question of first impression is inappropriate. The facts that the putative "state actor" was an insurance company and that the supposed "state action" consisted of taking advantage of an option afforded under state law are far too specific to be meaningful.

■ As the opinions of this Court and the Court of Appeals made plain, the governing standards were clear from cases decided well before plaintiffs brought this action. "Action taken by a private entity constitutes state action only when 'there is

---

**14.** *See Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (noting that application of qualified immunity standard for government officials—whether the conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known"—"depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified"); *Mitchell v. Forsyth,* 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 86 L.Ed.2d

411 (1985) (same); *Poe v. Leonard,* 282 F.3d 123, 135 (2d Cir.2002) (stating that in order to determine whether an official is entitled to qualified immunity, the relevant legal rule must be defined at the "appropriate level of particularity").

**15.** *See supra* note 12 and corresponding text.

**16.** Pl. Supp. Mem. 7.

such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." [17] Under established Supreme Court precedent, the fact that state law authorized the challenged action by an otherwise private entity or that the state granted approval without "put[ting] its own weight on the side of the proposed practice by ordering it" did not convert otherwise private action into state action.[18] Thus, plaintiffs' state action theory was inconsistent with controlling decisions of the United States Supreme Court, and there was no responsible basis for seeking a change in the law.

The parties are at loggerheads also over whether a number of other positions that plaintiffs took in this case also were frivolous, particularly as plaintiffs contend that MetLife is entitled to fees only for litigating those issues, if any, as to which plaintiffs' contentions met that standard. As to this latter point, plaintiffs simply are wrong. In order to obtain fees under Section 1988, the moving party must establish only that it was the prevailing party and that *"the action* was frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so." [19] It is undisputed that MetLife was the prevailing party here. In view of the fact that proof of state action was an indispensable prerequisite to success and that there was no colorable basis for supposing that this prerequisite could be satisfied, "the action" was frivolous. The cost of defending "the action" therefore is compensable.

### Conclusion

This Court never previously has granted attorneys' fees under 42 U.S.C. § 1988 to a prevailing defendant. Access to the courts to vindicate claims of constitutional right is too important to do so lightly. Both societal and institutional interests, however, demand that such relief be available where the process is seriously abused. That is what occurred here. Accordingly, MetLife's motion for an award of attorneys' fees is granted. The case is referred to the assigned Magistrate Judge for the purpose of facilitating agreement between the parties on the amount of fees or, in default of agreement, to make that determination. The Court has considered plaintiffs' other arguments and found them to be without merit.

SO ORDERED.

---

**17.** *Tancredi,* 149 F.Supp.2d at 84 (quoting *Jackson v. Met. Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), *aff'd,* 316 F.3d 308 (2d Cir.2003)).

**18.** *Jackson,* 419 U.S. at 357, 95 S.Ct. 449.

**19.** *Davidson v. Keenan,* 740 F.2d 129, 132 (2d Cir.1984) (quotation marks omitted and emphasis added).