Stephen TANCREDI and Ronald Speidel, Plaintiffs–Appellants,

v.

METROPOLITAN LIFE INSURANCE COMPANY, a New York Stock Company, and Metlife, Inc., a Delaware Holding Company, Defendants–Appellees.

No. 03–9296.

United States Court of Appeals, Second Circuit.

Argued: June 22, 2004.

Decided: Aug. 9, 2004.

James M. Pietz, Malakoff Doyle & Finberg, P.C., Pittsburgh, PA (Michael P. Malakoff, on the brief), Peter Wasylyk, Providence, RI, for Plaintiffs–Appellants.

Daniel J. Spillane, Debevoise & Plimpton LLP, New York, N.Y. (Bruce E. Yannett and Carl Micarelli, on the brief), Duncan J. Logan, Metropolitan Life Insurance Company, Long Island City, NY, for Defendants–Appellees.

Before: McLAUGHLIN, CABRANES, and WALLACE,[1] Circuit Judges.

McLAUGHLIN, Circuit Judge.

This appeal raises three questions: (1) Did the district court lose jurisdiction to award attorneys' fees after the complaint had been dismissed and a notice of appeal filed?; (2) Was the defendants' motion for attorneys' fees timely?; and (3) Was the complaint so utterly lacking in merit as to be frivolous thereby justifying an award of attorneys' fees to the defendants?

Plaintiffs, holders of insurance policies, appeal from a judgment of the United States District Court for the Southern District of New York (Kaplan, *J.*), granting attorneys' fees to the prevailing defendants, the Metropolitan Life Insurance Company and MetLife, Inc. (together, "MetLife").

Plaintiffs sued MetLife under 42 U.S.C. § 1983, arguing that the conversion of MetLife from a mutual to a stock life insurance company in accordance with New York Insurance Law violated numerous constitutional rights. The district court dismissed the case for failure to state a claim, and this Court affirmed the dismissal. *Tancredi v. Metro. Life Ins. Co.,* 149 F.Supp.2d 80 (S.D.N.Y.2001), *aff'd,* 316 F.3d 308 (2d Cir.2003). MetLife then moved for attorneys' fees. The district court granted the motion, holding that plaintiffs' claims were frivolous. *Tancredi v. Metro. Life Ins. Co.,* 256 F.Supp.2d 196 (S.D.N.Y.2003).

We hold that the district court properly exercised jurisdiction to award attorneys' fees. Although we cannot resolve on the record whether the district court properly considered MetLife's untimely motion for attorneys' fees, we conclude that the district court misinterpreted the standard for extending the time to make a fee motion.

1. The Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

On the merits, we conclude that the court abused its discretion by granting attorneys' fees because the allegation of state action, although indeed meritless, was not frivolous. Thus, we reverse the judgment granting attorneys' fees to MetLife.

## BACKGROUND

### I. *Facts*

Familiarity with the facts of this case, as set forth in our prior decision, *Tancredi v. Metropolitan Life Insurance Co.*, 316 F.3d 308 (2d Cir.2003), is assumed. We repeat only those facts relevant to this appeal.

In April 2000, Metropolitan Life Insurance Company converted from an old-fashioned mutual to a modern stock insurance company pursuant to New York Insurance Law § 7312. The plan obviously affected policyholders' interests in MetLife, converting them to cash, policy credits, or stock in the new publicly-traded MetLife, Inc., a Delaware holding company.

The conversion was initiated by MetLife's Board of Directors, and it received the required approval of two-thirds of the voting policyholders. It was also approved by the New York Superintendent of Insurance who found, after conducting a hearing, that the reorganization plan was fair and equitable to policyholders. Indeed, ninety-three percent of voting policyholders supported the plan. Upon the Superintendent's approval, the conversion became effective in April 2000.

### II. *Procedural History*

Plaintiff policyholders bottomed their § 1983 claim against MetLife on the contention that the conversion violated their rights under the United States Constitution's Takings Clause, Due Process Clause, and Commerce and Contracts Clauses of Article I. The complaint alleged that MetLife acted under color of state law by receiving the official sanction of the Superintendent of Insurance and by reorganizing pursuant to New York Insurance Law § 7312.

MetLife moved to dismiss under Fed. R.Civ.P. 12(b)(6) for failure to state a claim. The district court granted the motion, holding that Tancredi and Speidel failed to allege state action and, in the alternative, that their substantive constitutional claims lacked merit. *Tancredi*, 149 F.Supp.2d at 91. The final judgment dismissing the action was entered on July 12, 2001. Plaintiffs filed a timely notice of appeal on July 27.

As the prevailing party, MetLife moved on August 2, 2001 for attorneys' fees in the district court pursuant to 42 U.S.C. § 1988(b). This was seven days beyond the fourteen-day deadline set by Fed. R.Civ.P. 54(d)(2)(B). MetLife did not make a formal showing of "excusable neglect" under Fed.R.Civ.P. 6(b)(2) to justify the extension of time. On October 15, 2001, the district court denied the fee motion without prejudice to renewing the motion after the disposition of the then-pending appeal on the merits. The court conceded that MetLife's motion was untimely, but directed that "[a]ny such renewed motion shall be filed no later than fourteen calendar days following the entry of the appellate mandate on this Court's [*i.e.*, the district court's] docket."

On January 21, 2003, a panel of this Court affirmed the district court's dismissal, holding that MetLife was not a state actor because " 'mere approval or acquiescence' " of a state official does not sufficiently intertwine the official with corporate management to cloak the entire enterprise with state actor status. *Tancredi*, 316 F.3d at 313. This Court issued a mandate on February 21, 2003, which was then entered on the docket of the district court on February 27. In accor-

dance with the district court's October 15, 2001 order, MetLife renewed its motion for attorneys' fees in the district court on March 7, 2003. (MetLife did not request attorneys' fees for the appeal.)

In opposing MetLife's renewed fee motion, plaintiffs argued that: (1) the district court lost jurisdiction over the initial fee motion when plaintiffs filed a notice of appeal; (2) even if there were jurisdiction, the initial motion was untimely, and MetLife did not qualify for an extension of time; and (3) their complaint was not frivolous and thus did not justify an award of attorneys' fees.

Rejecting plaintiffs' contentions, the district court granted MetLife's motion for attorneys' fees. *Tancredi*, 256 F.Supp.2d at 202. The court found that the filing of a notice of appeal did not divest the court of jurisdiction to consider fee awards. *Id.* at 198–99. The court also held that the extension of time complied with Rule 54 and Rule 6. *Id.* at 199–00. Specifically, the court held that under Rule 54, "district courts have discretion to fix the timing of attorneys' fees motions, before or after the fourteen day period expires, without regard to Rule 6(b)(2)" and its requirement of demonstrating excusable neglect. *Id.* at 199.

On the substantive issue, Judge Kaplan observed that while he had never before granted attorneys' fees to a prevailing defendant under § 1988, the frivolity of plaintiffs' action was so patent that it abused the litigation system and warranted an award of fees. *Id.* at 202. The court found the action to be frivolous "[i]n view of the fact that proof of state action was an indispensable prerequisite to success and that there was no colorable basis for supposing that this prerequisite could be satisfied." *Id.*

The precise calculation of fees was referred to Magistrate Judge Francis. Although MetLife asked for $258,770.75, it was awarded only $30,000, based on plaintiffs' ability to pay.

Tancredi and Speidel now appeal the judgment awarding $30,000 to MetLife. They raise the same arguments made in the district court.

## DISCUSSION

### I. Subject Matter Jurisdiction

Plaintiffs first argue that the district court lacked subject matter jurisdiction over MetLife's attorneys' fees motion because: (1) the underlying § 1983 action failed under the so-called "substantiality doctrine"; and alternatively (2) even if the district court had subject matter jurisdiction over the § 1983 claims, it lost jurisdiction after the dismissal of the complaint and the filing of a notice of appeal. We disagree. The district court properly exercised jurisdiction over MetLife's motion for attorneys' fees.

### A. Substantiality Doctrine

■ Under the substantiality doctrine, "federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" *Hagans v. Lavine*, 415 U.S. 528, 536, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579, 24 S.Ct. 553, 48 L.Ed. 795 (1904)). Claims are deemed insubstantial "only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial." *Id.* at 538, 94 S.Ct. 1372.

Turning this doctrine on its head—and to their own advantage—plaintiffs contend that if the complaint was as frivolous as

the district court found it, then the court lacked subject matter jurisdiction to entertain the motion for attorneys' fees. Met-Life responds that there is nothing in *Hagans* to suggest that the Supreme Court intended to preclude an award of attorneys' fees in cases where the district court dismissed for lack of subject matter jurisdiction.

■ We reject plaintiffs' argument. The district court and a prior panel of this Court properly exercised jurisdiction over plaintiffs' underlying § 1983 complaint. *Tancredi v. Metro. Life Ins. Co.*, 149 F.Supp.2d 80 (S.D.N.Y.2001), *aff'd*, 316 F.3d 308 (2d Cir.2003). In dismissing, and affirming the dismissal of, plaintiffs' complaint for failure to state a claim, both the district court and this Court implicitly recognized subject matter jurisdiction. It is inarguable that a court always has jurisdiction to determine its own jurisdiction. *See Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 88 (2d Cir.1997) ("Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter." (internal quotation marks and citation omitted)); *see also Cook v. Peter Kiewit Sons Co.*, 775 F.2d 1030, 1037 (9th Cir. 1985) (awarding attorneys' fees despite dismissal under the substantiality doctrine as " 'an appropriate deterrent to future frivolous suits' " (quoting *Callow v. Amerace Corp.*, 681 F.2d 1242, 1243 (9th Cir. 1982))).

### B. *Dismissal and Notice of Appeal*

Plaintiffs maintain that even if the district court had jurisdiction over the underlying § 1983 action, the court was divested of jurisdiction over the motion for attorneys' fees, presumably after it dismissed the complaint and surely after plaintiffs filed a notice of appeal. We find both arguments meritless.

■ We have consistently held that "[w]henever a district court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees." *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 98 (2d Cir.2003); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (a district court retains jurisdiction to impose Rule 11 sanctions after plaintiff voluntarily dismisses action); *Covanta Onondaga Ltd. P'ship v. Onondaga County Res. Recovery Agency*, 318 F.3d 392, 396 (2d Cir.2003) ("[A] court that has concluded its adjudication of the merits of a case within its jurisdiction by entering a final judgment retains authority to take action with respect to some collateral matters related to the case, such as attorney's fees and costs.").

■ With respect to the appeal, it is true, as plaintiffs point out, that the filing of a notice of appeal has jurisdictional implications. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal"). However, notwithstanding a pending appeal, a district court retains residual jurisdiction over collateral matters, including claims for attorneys' fees. *See, e.g., Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir.1998); *Terket v. Lund*, 623 F.2d 29, 33–34 (7th Cir.1980); *see also White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445, 452 n. 14, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) (an attorneys' fee issue is collateral to the decision on the merits).

■ The 1993 Advisory Committee's notes to Rule 54(d) are enlightening. They state that "[i]f an appeal on the

merits of the case is taken, the [district] court may rule on the claim for fees, may defer its ruling on the motion, *or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved."* Fed.R.Civ.P. 54(d) advisory committee's note (emphasis added). The procedures followed here by the district court were completely in accord with these notes.

## II. *Extension of Time*

Next, plaintiffs contend that the district court abused its discretion by allowing MetLife extra time to renew its already untimely motion for attorneys' fees.

Without requesting an extension of time, MetLife made its initial motion for attorneys' fees seven days after the expiration of the fourteen-day deadline imposed by Rule 54(d)(2)(B). Noting that the motion was untimely, the district court denied the motion without prejudice to renewal after the disposition of the then-pending appeal. Relying on the district court's order, MetLife then renewed its motion for attorneys' fees within fourteen days after the entry of this Court's mandate.

■■ We review a district court's extension of time for abuse of discretion. *See Davidson v. Keenan,* 740 F.2d 129, 132 (2d Cir.1984). However, the interpretation of a procedural rule is reviewed *de novo. See Jarvis v. Ford Motor Co.,* 283 F.3d 33, 59 (2d Cir.2002).

Rule 54(d)(2)(B) states that "[u]nless otherwise provided by statute or *order of the court,* [a] motion [for attorneys' fees] must be filed and served no later than 14 days after entry of judgment." Fed. R.Civ.P. 54(d)(2)(B) (emphasis added). According to Rule 6(b)(2), however, a district court may extend certain deadlines "upon motion made after expiration of the specified period .... where the failure to

act was the result of *excusable neglect."* Fed.R.Civ.P. (6)(b)(2) (emphasis added). Although Rule 6(b)(2) lists several rules to which the "excusable neglect" standard does not apply, Rule 54 is not among them. *See id.*

Parsing these two provisions of the Federal Rules of Civil Procedure, the district court held that the "excusable neglect" standard of Rule 6(b)(2) does not limit a court's power under Rule 54(d)(2)(B) to extend the time to move for attorneys' fees even after the expiration of the fourteen-day deadline. To hold otherwise, the district court reasoned, would render superfluous Rule 54(d)(2)(B)'s introductory phrase, "[u]nless otherwise provided by statute or order of the court." In any event, the court found that MetLife's motion did satisfy Rule 6(b)(2)'s "excusable neglect" standard.

Plaintiffs contend that: (1) the "excusable neglect" standard of Rule 6 qualifies a court's Rule 54 power to extend the time for filing an attorneys' fee motion after the deadline expires; and (2) the district court abused its discretion in finding "excusable neglect" here. We accept plaintiffs' first contention but find the second issue unreviewable on the record before us. In so holding, we expressly reject MetLife's argument that Rule 54's introductory clause, "[u]nless otherwise provided by statute or order of the court," gives district courts *carte blanche* to extend the time to move for attorneys' fees after the deadline expires without having to find "excusable neglect" under Rule 6.

■ It is no surprise that the Law Reporters bristle with decisions routinely applying the "excusable neglect" standard to untimely motions for attorneys' fees. *See, e.g., Allen v. Murph,* 194 F.3d 722, 723–24 (6th Cir.1999) (the "district court could permit a late filing only if the delay was

the result of 'excusable neglect'" where the party failed to move for attorneys' fees or to request an extension of time within fourteen days of judgment); *Sugarbaker v. SSM Health Care,* 187 F.3d 853, 855–56 (8th Cir.1999) (applying the "excusable neglect" standard to an untimely fee request); *Horsford v. The Salvation Army,* 2002 WL 31175221, at *2 (S.D.N.Y. Oct.1, 2002) (same); *Sokoloff v. Gen. Nutrition Cos., Inc.,* 2001 WL 536072, at *4 (D.N.J. May 21, 2001) (same); *Schering Corp. v. Amgen, Inc.,* 198 F.R.D. 422, 425–26 (D.Del.2001) (same).

We see no reason to deviate from the practice of these courts. Indeed, by its very terms, the fourteen-day deadline of Rule 54 is not a fatal jurisdictional deadline. *See, e.g., Schering Corp.,* 198 F.R.D. at 425 (noting that the deadline is "not mandatory"); *cf. Cosgrove v. Sears, Roebuck & Co.,* 191 F.3d 98, 101 (2d Cir.1999) (construing five-day time limit under Rule 54(d)(1)). Instead, the time limit is expressly qualified by Rule 54's prefatory language, "[u]nless otherwise provided by statute or order of the court."

Many jurisdictions have local rules that preempt Rule 54 by allowing fee motions thirty or more days after entry of judgment. (The Southern District of New York has no such rule.) Where such rules have been adopted, every circuit that has considered the question has held that such local rules qualify as "order[s] of the court," and hence are an exception to the limitations period in Rule 54. *Planned Parenthood of Cent. N.J. v. Attorney Gen.,* 297 F.3d 253, 260–61 (3d Cir.2002) (thirty-day filing deadline set by local rule applied to motion for attorneys' fees); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,* 253 F.3d 1332, 1335 (11th Cir.2001) (same); *Jones v. Cent. Bank,* 161 F.3d 311, 312–13 (5th Cir.1998) (same); *Eastwood v. Nat'l Enquirer, Inc.,* 123 F.3d 1249, 1257 (9th Cir.1997) ("[L]ocal Rules are standing court orders for purposes of Rule 54(d)."); *Johnson v. Lafayette Fire Fighters Ass'n Local 472,* 51 F.3d 726, 728–30 (7th Cir. 1995) (holding that local rule providing ninety days to move for attorneys' fees modified the fourteen-day filing period contained in Rule 54).

None of these cases, however, suggest that "order of the court" confers on district courts untrammeled discretion to extend the time to file a fee motion. Based on the reasoning of these cases and the text of Rule 54 itself, we are persuaded that reading "order of the court" to mean an individual judge's order extending the deadline, as MetLife urges, would threaten the concept of a uniform deadline—even at the local district level—and fly in the face of the rationales underlying the deadline.

Congress's reasons for its 1993 addition to Rule 54(d)(2)(B) (the fourteen-day deadline) were three-fold: (1) to provide notice of the fee motion to the non-movant before the time to appeal expires; (2) to encourage a prompt ruling on fees to facilitate a consolidated appeal on both the merits and the attorneys' fee issue; and (3) to resolve fee disputes efficiently, "while the services performed are freshly in mind." Fed. R.Civ.P. 54 advisory committee's notes (1993); *see Weyant v. Okst,* 198 F.3d 311, 315 (2d Cir.1999) (noting that the deadline was intended, in part, to minimize "piecemeal appeals of merits and fee questions"). Allowing district judges to extend the deadline for filing a motion for attorneys' fees without any showing of "excusable neglect" would impede these efficiency and fairness goals.

Reading Rule 54(d)(2)(B) together with Rule 6(b)(2), as we must, *see Nasser v. Isthmian Lines,* 331 F.2d 124, 127 (2d Cir.1964) (noting that "no single Rule can consequently be considered in a vacuum"), we hold that absent a statute or order of

the court such as a local rule, the district court was required to find "excusable neglect" under Rule 6(b)(2) to extend the time to move for attorneys' fees after the expiration of Rule 54's fourteen-day deadline. *See Crue v. Aiken*, 370 F.3d 668, 680–81 (7th Cir.2004) (affirming a finding of "excusable neglect" where untimely fee request was filed one day after the expiration of the thirty-day deadline set forth in the local rule).

We turn now to plaintiffs' claim that the district court abused its discretion in finding that MetLife demonstrated "excusable neglect." To determine whether a party's neglect is excusable, a district court should take into account: "[1][t]he danger of prejudice to the [opposing party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was in the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). As these factors suggest, "excusable neglect" is an "elastic concept," *id.* at 392, 113 S.Ct. 1489, that is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," *id.* at 395, 113 S.Ct. 1489.

Although MetLife's seven-day delay was minimal and it seems unlikely that plaintiffs suffered any prejudice, we are unable to review the district court's finding of "excusable neglect" because of the paucity of the record. Indeed, the reason for the delay is entirely unclear. *See Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 249–51 (2d Cir.1997) (construing narrowly the "excusable neglect" standard set forth in *Pioneer*); *Mattel, Inc. v. Radio City Entm't*, 210 F.R.D. 504, 505 (S.D.N.Y.2002) (rejecting claim of "excusa-ble neglect" where the reason for the late filing was that the movant merely "overlooked or forgot[ ] about Rule 54(d)(2)(B)"). There is no need to remand for further findings, however, given our ultimate holding that the award of attorneys' fees was itself an abuse of discretion. Although we do not remand, we note that MetLife would face a great hurdle in demonstrating "excusable neglect" on these facts. Absent a sufficient reason for its delay, the fact that the delay and prejudice were minimal would not excuse MetLife's mere inadvertence.

## III. *State Action*

On the merits, plaintiffs contend that the district court abused its discretion by finding the allegation of state action "frivolous, unreasonable, or groundless," and thereby granting attorneys' fees to MetLife. For the reasons set forth below, we hold that the § 1983 complaint, while meritless, did not justify an award of attorneys' fees.

We review an award of attorneys' fees for abuse of discretion. *Green v. Torres*, 361 F.3d 96, 98 (2d Cir.2004).

The statute governing the award of attorneys' fees in § 1983 actions, 42 U.S.C. § 1988(b), provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). When the prevailing party is the defendant, as here, attorneys' fees may be recovered if the underlying action was "frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so." *Davidson*, 740 F.2d at 132 (internal quotation marks omitted).

To prevail on their § 1983 claim, plaintiffs had to demonstrate that MetLife was a "state actor" when it converted to a stock life insurance company pursuant to

N.Y. Insurance Law § 7312. The district court found that plaintiffs' state action theory "was inconsistent with controlling decisions of the United States Supreme Court, and there was no responsible basis for seeking a change in the law." *Tancredi v. Metro. Life Ins. Co.*, 256 F.Supp.2d 196, 201–02 (S.D.N.Y.2003). The court believed that its earlier dismissal and our decision affirming that dismissal demonstrated that "the governing standards were clear from cases decided well before plaintiffs brought this action." *Id.* at 201. Based on these findings, the district court concluded that "[i]n view of the fact that proof of state action was an indispensable prerequisite to success and that there was no colorable basis for supposing that this prerequisite could be satisfied, 'the action' was frivolous." *Id.* at 202. We disagree.

To state a claim under § 1983, a plaintiff must demonstrate that the defendant acted "under color of" state law. 42 U.S.C. § 1983. If a defendant's conduct satisfies the state action requirement under the Fourteenth Amendment, then that conduct also constitutes action "under color of" state law for purposes of § 1983. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 n. 2, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001). It is settled that conduct by a private entity constitutes state action only when "there is a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

The district court discussed in great detail the failure to allege state action. *Tancredi*, 149 F.Supp.2d at 84–86. It noted that a "majority" of courts have not found state action under similar circumstances where a state approves a mutual-to-stock

conversion plan. *Id.* at 85. In so holding, however, the court cited a decision filed nine months *after* plaintiffs filed their complaint. *See Cranley v. Nat'l Life Ins. Co. of Vt.*, 144 F.Supp.2d 291 (D.Vt.2001).

Significantly, the court also relegated to a footnote a citation to *Lovell v. Peoples Heritage Sav. Bank*, 776 F.Supp. 578 (D.Me.1991), which held that a state banking superintendent's approval of a bank's mutual-to-stock conversion plan did constitute state action. *Lovell* concluded that " 'when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found.' " *Id.* at 586 (quoting *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 486, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988)). The debate evident in this footnote reveals that plaintiffs had some foundation, albeit a weak one, to bring their claim.

When we earlier affirmed the district court we agreed that there was not sufficient state action to support a § 1983 claim. *See Tancredi*, 316 F.3d at 312–14. We did not suggest that plaintiffs' allegation was so bizarre as to be frivolous. *See Hughes v. Rowe*, 449 U.S. 5, 15, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (vacating award of attorneys' fees where allegations, although properly dismissed for failure to state a claim, "deserved and received the careful consideration of both the District Court and the Court of Appeals" and therefore were not groundless); *Brentwood Acad.*, 531 U.S. at 295, 121 S.Ct. 924 ("What [action] is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity.").

An expansive view of state action is suggested by *Brentwood Academy*, where the Supreme Court held that the Tennessee Secondary School Athletic Association qualified as a state actor because its actions were so "entwined" with the state

function of operating public schools. *Brentwood Acad.*, 531 U.S. at 302, 121 S.Ct. 924. *Brentwood Academy* effectively broadened the state action test to include "entwinement" for the first time. *Id.* at 305, 121 S.Ct. 924 (Thomas, *J.*, dissenting). In so doing, the Supreme Court acknowledged the flexibility of the test and observed that state action existed even though "the facts would not [have] support[ed] a finding of state action under various criteria applied in other cases." *Id.* at 302, 121 S.Ct. 924. Although *Brentwood Academy* was decided after plaintiffs filed their complaint, it illustrates the nebulous character of the state action test, and lends some support, however quixotic, to litigants like the plaintiffs in this case.

As the Supreme Court cautioned in *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (analyzing an analogous attorneys' fee provision under Title VII), "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421–22, 98 S.Ct. 694. Hindsight proves that plaintiffs' allegation of state action was very weak, but it was not completely without foundation. Accordingly, the district court abused its discretion by awarding attorneys' fees to MetLife.

## CONCLUSION

For the foregoing reasons, we REVERSE the judgment granting attorneys' fees to MetLife.