NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0108n.06

No. 16-3280

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 15, 2017
DEBORAH S. HUNT, Clerk

KAREN EPPERSON, et al.,

     Plaintiffs-Appellees,

v.

MICHAEL COLBERT,

     Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

BEFORE:    MOORE and CLAY, Circuit Judges; and HOOD, District Judge.[*]

**CLAY, Circuit Judge.** Defendant Michael Colbert, the Director of the Ohio Department of Jobs and Family Services,[1] appeals the district court's order granting Plaintiffs' supplemental motion for attorneys' fees and awarding $106,678 in said fees. For the reasons set forth below, we **VACATE** the judgment of the district court and **REMAND** the action back to the district court for further proceedings not inconsistent with this opinion.

**BACKGROUND**

Plaintiffs Betty Ledford and Ida Gates (collectively, "Plaintiffs") were entitled to receive aid and attendance allowances from the Department of Veterans Affairs (the "VA") because their now-deceased husbands were both World War II veterans. Both women lived in Ohio Medicaid-

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1] This action was initially filed against the Director of the Ohio Department of Job and Family Services. However, in 2013, responsibility for Ohio's Medicaid program was moved to a separate Department of Medicaid. *See* Ohio Rev. Code 5162.03.

eligible assisted living facilities and received services in these facilities through one of Ohio's approved Medicaid "waiver" programs. These programs allow individuals to use Medicaid funds for home and community-based services instead of requiring them to be admitted to a skilled nursing home or intermediate care facility. The Ohio Department of Medicaid (the "Department") is responsible for calculating how much of a Medicaid-eligible recipient's income must be contributed to cover the cost of her care, which is determined by federal law. When calculating the required contribution amount, the Department included the first $90 of the VA allowance as part of their non-exempt income, even though a section of the Social Security Act exempted the first $90 of an individual's monthly VA benefit from being included in the income calculation. Plaintiffs were therefore required to contribute these funds to their care, despite federal law to the contrary.

On October 18, 2010, Plaintiffs filed a complaint in the United States District Court for the Southern District of Ohio seeking preliminary and permanent injunctions against the Department to prohibit the Department from considering this $90 monthly payment as income. They also sought an order that would require the Department to refund any money that was improperly collected. After amending the complaint to include two more women, the Plaintiffs moved for class certification. The district court granted Plaintiffs' class-certification motion and authorized them to represent the following class:

> All Ohio residents who have been participants in the State of Ohio's Home and Community Based Medicaid Waiver programs since October 12, 2010, or who may have become participants thereafter and who are entitled to a VA pension payment, including any payment made for aid and attendance or for unreimbursed medical expenses, and have had the first $90 of this allowance included as part of their income in calculating the payment they must make to their Medicaid Home and Community Based Waiver service providers.

(R. 68, Order on Mot. for Class Certification, PageID #911–12.)

Both Plaintiffs and Defendant Michael Colbert, the Director of the Department, filed summary judgment motions. On May 9, 2012, the district court granted Plaintiffs' motion for summary judgment because "the policy implemented by [the Department] in counting the first $90 of Plaintiffs' VA aid and attendance benefits in the post-eligibility determination violates 42 U.S.C. § 1396a(r)." (R. 71, Order, PageID #936.) The Department was thereafter "enjoined from treating such benefits in this fashion for all class members, and for all [Home and Community Based Services] Medicaid waiver program participants who receive VA aid and attendance benefits, effective October 12, 2010." (*Id.* at 936–37.) In addition, the district court denied Defendant's motion for summary judgment as to all claims except the claims by Plaintiff Ledford, as she passed away before the suit was resolved.

After judgment was entered, Plaintiffs filed a timely motion for attorney fees on July 27, 2012, pursuant to 42 U.S.C. § 1988(b).[2] However, the parties subsequently agreed that Defendant would pay $125,000 to Plaintiffs for "attorney fees and costs incurred by counsel for Plaintiffs through the Judgment entered in this case on June 18, 2012 and incurred in the preparation of the Plaintiffs' motion for fees and their reply." (R. 80, Consent Entry on Award of Pls.' Fees & Costs, PageID #1053.) The district court approved the agreement on October 3, 2012.

No activity occurred in this case for over three years until November 4, 2015, when Plaintiffs filed two motions: Plaintiffs' Motion to Reopen Case to Consider Motion for Attorney Fees and Plaintiffs' Motion for Award of Post-Judgment Attorney Fees. This second motion

---

[2] Federal Rule of Civil Procedure 54(d) requires motions for attorney fees to "be filed no later than 14 days after the entry of judgment," unless "a statute or court order provides otherwise." Fed. R. Civ. P. 54(d)(2)(B). The Local Rules for the Southern District of Ohio, however, require these motions to be filed "not later than forty-five days after the entry of judgment." S.D. Ohio Civ. R. 54.2(a).

sought $219,473.50 in fees for monitoring and enforcing the district court's permanent injunction. Specifically, Plaintiffs sought fees in connection with three types of activities: (1) "negotiat[ing] and comment[ing] on Defendant's rule change process," (2) "responding to class members' inquiries as to the meaning of the change, their rights and review of class member's individual cases to assure their patient liability had been adjusted," and (3) "processing and advice to class members regarding receipt of their benefits back to October, 2010." (R. 85, Pls.' Mot. for Award of Post-J. Att'y Fees, PageID #1062–63.) Defendant opposed both motions. On March 8, 2016, the district court granted the order reopening the case and granted Plaintiffs' motion for post-judgment attorney fees. The district court, however, did not award Plaintiffs the full amount requested. Specifically, the district court did not grant the requested fees for the work of law clerks and law graduates, as that work was mainly clerical and was thus not necessary to secure Plaintiffs' success. The court also reduced the fees of the two lead attorneys by 25% to account for any duplication of efforts by both lawyers and to remove the billing entries for addressing "individual class members' problems with securing VA documentation, issues regarding probate matters, and time reflecting administrative or organizational work." (R. 93, Order, PageID #1253–54.) The court further disallowed fees charged by three other attorneys when such fees were associated with administrative tasks or were duplicative of the work of the two lead attorneys. As a result, the district court awarded Plaintiffs post-judgment attorney fees in the amount of $106,678. Defendant filed a timely notice of appeal.

## DISCUSSION

This case presents a relatively unusual situation where Plaintiffs' counsel continued to work on the case for an additional three years after the district court entered judgment in their favor

and approved the settlement agreement requiring Defendant to pay Plaintiffs $125,000 in attorney fees for their attorneys' work during the litigation. Such work continued without the knowledge of the court, and with Defendant unaware that Plaintiffs would later be seeking attorney fees for their subsequent enforcement and monitoring efforts. Indeed, the district court itself noted that, "[h]ere, the final judgment provides for no monitoring of the state's compliance by any entity. And the parties' previous stipulation regarding attorney's fees for the litigation up to the time of judgment is silent about any involvement of Plaintiffs' counsel in post-judgment activities, or their intent to seek an additional amount of fees at some future date." (*Id.* at 1249.) Nonetheless, Plaintiffs returned to the district court after completing their post-judgment enforcement efforts and received over $100,000 in attorney fees for their work over those three years. For this appeal, we must first determine whether the district court properly found Plaintiffs to be a prevailing party for purposes of their post-judgment enforcement actions. Subsequently, we address whether the district court erred by failing to consider the timeliness of the motion.

## I.       Award of Post-Judgment Attorney Fees

### A.       Standard of Review

"A district court's determination of prevailing-party status for awards under attorney-fee-shifting statutes—such as 42 U.S.C. § 1988—is a legal question that [this court] reviews de novo." *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 617–18 (6th Cir. 2013) (alteration in original) (quoting *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 619 (6th Cir. 2007)). This Court reviews "a district court's award of attorney fees under 42 U.S.C. § 1988 for an abuse of discretion." *Id.* at 618 (citing *Reed v. Rhodes*, 179 F.3d 453, 469 n.2 (6th Cir. 1999)). "A district court abuses its discretion when it 'relies upon clearly erroneous factual findings, applies the law

improperly, or uses an erroneous legal standard.'" *Id.* (quoting *Wikol ex rel. Wikol v. Birmingham Pub. Sch. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004)).

### B.    Analysis

Generally, a prevailing party in a federal civil rights action is entitled to reasonable attorneys' fees. 42 U.S.C. § 1988. This Court, in *Binta B.*, established the standard for determining whether a party is "prevailing" for purposes of work "performed enforcing or defending [a] prior decree." 710 F.3d at 626. "Specifically, to recover fees for such work, a plaintiff must 'show that the work was necessary to enforce the prior decree or judgment and resulted in a court order or agency determination that at the very least secured plaintiff[s'] initial success in obtaining the consent decree.'" *United States v. Tennessee*, 780 F.3d 332, 336–37 (6th Cir. 2015) (quoting *Binta B.*, 710 F.3d at 626). "That standard, by its terms, contains three elements: first, that the work was necessary to enforce the prior judgment or decree; second, that the work resulted in a court order or agency determination; and third, that the order or determination at least secured the plaintiff[s'] initial success in obtaining the decree." *Id.* at 337 (citing *Binta B.*, 710 F.3d at 626).

The district court found that Plaintiffs had satisfied all three elements because the attorneys' work was necessary to secure the "subsequent administrative awards to the class members and the final promulgation of the amended rules." (R. 93, at 1258.) The court noted that Plaintiffs' counsel exchanged numerous emails with counsel for the Department in order to insure that the Department was implementing a new regulation and that that regulation would include refunds for all individuals receiving VA pension benefits, not just those receiving aid and assistance benefits. The court further noted that Plaintiffs' counsel assisted in resolving

problems relating to inadequate toll-free telephone lines to address class members' needs, as well as problems relating to misinformation being provided by Department staff on those lines.

On appeal, Defendant challenges the district court's judgment insofar as the court found that Plaintiffs' attorneys' work resulted in a court order or agency determination, thus allowing for the recovery of post-judgment fees. Specifically, Defendant argues that Plaintiffs "had to show that [their] attorneys actually obtained a court order or agency determination" in order to be entitled to receive post-judgment attorney fees. (Def.'s Br. at 17.) Defendant argues that this rule applies to both Plaintiffs' counsels' enforcement and monitoring actions.

We first note that the record is unclear as to what activities undertaken by Plaintiffs' counsel were enforcement activities versus general monitoring activities. However, the district court, perhaps anticipating this problem, appears to have eliminated all fees for monitoring and instead focused on the fees that Plaintiffs requested for enforcing the court's prior judgment. Indeed, the district court announced that it was applying the analysis set forth in *Binta B.* and was determining "if counsels' work was necessary to enforce the final judgment." (R. 93, at 1252.) As the district court noted, Plaintiffs' motion included a request for fees related to 320.1 hours of "General Class Management" in addition to another approximately 300 hours spent addressing the cases of thirty-three different class members. However, after subtracting the entries for all law clerks, law graduates, and one attorney, as well as 25% of the fees for the two lead attorneys, 20% for one junior attorney, and approximately 30% for another attorney, the district court determined that the remainder of the fees was "necessary to [the] enforcement and implementation of the judgment." (R. 93, at 1254; *see also id.* at 1258 (awarding fees relating only to the administrative awards and the rule promulgation).) Therefore, we conclude that all fees for monitoring the class action were eliminated by the district court and that, on appeal, we

only need to address whether the district court properly awarded fees to Plaintiffs for their enforcement efforts.

Defendant first argues that the two agency determinations that were resolved in class members' favor do not count for purposes of the *Binta B.* standard because attorney representation was not required for the agency hearings, and the hearings were only to determine the amounts of the refunds that should be given to two class members, not whether the class members were entitled to the refunds in the first place. Defendant further argues that Plaintiffs' counsels' other activities, which Defendant characterizes as monitoring activities, also did not result in any court order or agency determination. Thus, according to Defendant, the second *Binta B.* factor has not been established for any of the fees requested by Plaintiffs.

We first find that Plaintiffs met their burden of showing that they obtained an agency determination that secured the initial success of the lawsuit insofar as Plaintiffs' counsel was able to obtain administrative awards for their class members. We know from the record that two of the class members appealed the Department's decision on how much reimbursement to award to them based on their membership in the class action. The relevant hearing officers concluded that the Department's reimbursement determination was unsupported and therefore ordered additional reimbursement to the class members. We consider these state hearing decisions to be "agency determinations" for the purposes of the *Binta B.* standard. Consequently, we conclude that the district court properly determined that attorney fees were warranted insofar as its award was based on these enforcement actions.

We similarly find that Plaintiffs can recover fees for their counsels' efforts in obtaining administrative awards for the other class members, even though those awards did not require state hearings to challenge the initial determinations of the amounts of the refunds. The district

court's order contemplated Plaintiffs receiving refunds for the money that was improperly collected. An agency determination was required for each of these refunds to be calculated and sent to the appropriate class member. Therefore, to the extent that the district court awarded fees for Plaintiffs' counsels' efforts relating to securing these refunds, such fees were proper.

Finally, the district court properly awarded Plaintiffs' counsel fees for their efforts in conferring with the Department to update the relevant regulations so that the regulations conform with the district court's summary judgment order. In the context of a consent decree ordering that new regulations be promulgated, the Supreme Court, in *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 478 U.S. 546 (1986), affirmed the award of fees to the prevailing party for time spent commenting on the proposed regulations, as "enforcement of the decree, whether in the courtroom before a judge, or in front of a regulatory agency with power to modify the substance of the program ordered by the court, involved the type of work which is properly compensable." *Id.* at 558. As we noted in *Binta B.*, *Delaware Valley* was not overruled by *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), which dealt with a situation where West Virginia changed its statute in response to a lawsuit being filed, not in relation to a judicially-sanctioned order or decree. *Binta B.*, 710 F.3d at 624–25. We did, however, note that *Buckhannon*'s rationale of rejecting the catalyst theory did have some weight in the post-judgment fee context. *Id.* Thus, in an attempt to harmonize *Delaware Valley* and *Buckhannon*, this Court created the three-factor test outlined above, which requires that any action by the prevailing party's attorney must "result in a subsequent court order or agency determination" in order for fees related to that action to be compensable on a motion for post-judgment attorney fees. *Id.* at 625.

Here, Plaintiffs' counsel's communications with the Department brought about the required change in the regulations, meaning the regulations now conform to the requirements set forth by the district court. Contrary to the representations of Defendant, Plaintiffs' counsel's advocacy was necessary, as the regulations as initially proposed by the Department did not afford the full relief required by the district court's order. [(R. 93, at 1251.)] The result of Plaintiffs' counsel's efforts was an agency determination that certain funds would be excluded not only for those receiving VA aid and attendance benefits but for all individuals receiving VA pensions. [(*Id.*)] We conclude that, under these circumstances, the attorney fees charged in relation to these advocacy activities are compensable under both *Delaware Valley* and *Binta B.*, as they were necessary to securing the Department's compliance in promulgating regulations that protected Plaintiffs to the full extent required by the district court's order. Consequently, we conclude that the district court properly awarded attorney fees to Plaintiffs for these activities.

## II.     Timeliness of Plaintiffs' Motion for Award of Post-Judgment Attorney Fees

Having determined that Plaintiffs can recover attorney fees based on their advocacy activities, we turn our attention to the second issue presented by this appeal—whether the district court erred by not considering whether Plaintiffs' second motion for attorney fees was timely.

### A.     Standard of Review

This Court "treat[s] the district court's interpretation and application of the Federal Rules of Civil Procedure as a question of law and, as with all legal questions, review[s] this analysis de novo." *Jalapeno Prop. Mgmt., LLC v. Dukas*, 265 F.3d 506, 510 (6th Cir. 2001); *see also Quigley v. Rosenthal*, 427 F.3d 1232, 1236 (10th Cir. 2005) ("Generally speaking, we review for abuse of discretion a district court's ruling on a motion for fees and/or costs under Rule 54(d)(2).

To the extent, however, the issue . . . implicates the district court's interpretation of Rule 54(d)(2), we apply a de novo standard of review." (citations omitted)).

### B. Analysis

Defendant argues on appeal that Plaintiffs' motion for attorney fees should have been denied because it was filed more than three years after judgment was entered by the district court. In response, Plaintiffs argue that "no case has applied the time strictures of [Rule] 54(d) to a supplemental motion for fees post judgment," and that therefore the time limitations do not apply to supplemental motions for fees post-judgment. (Pls.' Br. at 15.)

In general, Federal Rule of Civil Procedure 54 governs motions for attorney fees as well as the time within which such motions for fees must be filed. *Miltimore Sales, Inc. v. Int'l Rectifier, Inc.*, 412 F.3d 685, 687 (6th Cir. 2005). Rule 54(d)(2)(B) provides that, "[u]nless a statute or a court order provides otherwise, the motion [for attorney fees] must[] be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B). "District courts, however, 'remain free to adopt local rules establishing timeliness standards for the filing of claims for attorney's fees.'" *Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 105 F.3d 252, 257 (6th Cir. 1997) (quoting *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 454 (1982)). The Southern District of Ohio adopted such a rule and requires motions for attorney fees to be filed "not later than forty-five days after the entry of judgment." S.D. Ohio Civ. R. 54.2(a). "The district court may, for good cause, extend the . . . deadline 'on motion made after the time has expired if the party failed to act because of excusable neglect.'" *Slep-Tone Entm't Corp. v. Karaoke Kandy Store, Inc.*, 782 F.3d 313, 316 (6th Cir. 2015) (quoting Fed. R. Civ. P. 6(b)(1)(B)); *see also Allen v. Murph*, 194 F.3d 722, 723–24 (6th Cir. 1999) (noting that, when a party failed to timely file its motion for attorney fees and failed to request an enlargement of the

time period before such time expired, "the district court could permit a late filing only if the delay was the result of 'excusable neglect.'" (quoting Fed. R. Civ. P. 6(b)(2)).

Notably, this rule is of relatively recent creation. Prior to 1993, there were no deadlines for attorney fees motions. *See* Fed. R. Civ. P. 54 advisory committee's notes (1993) (citing *White*, 455 U.S. at 454). However, in 1993, the Rules were changed to implement the fourteen day deadline in order to accomplish three goals: (1) "to assure that the opposing party is informed of the claim before the time for appeal has elapsed," (2) to "afford[] an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind," and (3) to "enable[] the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case." *Id.*

From these identified goals, we can infer that timely notice in general and timely notice to the opposing party in particular is of paramount importance. Such notice "creates some incentive to resolve a post-decree skirmish without dragging out the litigation." *Binta B.*, 710 F.3d at 626. District courts would also be aided by such a rule, as they would be able to decide fee motions at a time when counsel's activities were still fresh in the minds of all parties and could more easily be evaluated for their necessity and efficacy. Moreover, requiring timely notice would prevent the situation presented in this case from occurring again, where Plaintiffs filed a second motion for attorney fees three years after the judgment had been entered without requesting a court order appointing them as monitors or seeking leave from the court to file supplemental motions after the original deadline for attorney fees motions expired.

Based on the goals announced at the time Rule 54(d)(2) was enacted and the principles derived therefrom, we conclude that the district court erred in awarding attorneys' fees without

considering whether the motion was timely or whether any untimeliness should be excused based on the principle of excusable neglect. *See, e.g.*, *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 228 (2d Cir. 2004) (holding that "the district court was required to find 'excusable neglect' under Rule 6(b)(2) to extend the time to move for attorneys' fees after the expiration" of the time limit). We therefore vacate the decision of the district court to award post-judgment attorney fees, and remand the action to the district court for further consideration of whether Plaintiffs can establish excusable neglect for failing to file a request for supplemental attorney fees until over three years after judgment was entered, despite recognizing that such fees may be sought based on their continued interactions with the Department.

## CONCLUSION

For the reasons stated above, we **VACATE** the judgment of the district court and **REMAND** the action for further consideration not inconsistent with this opinion.